## MINDER v. THE STATE.

1. Even if refusing to continue a criminal case because of the absence of mate-rial witnesses for the accused who reside in another State is, under any cir-cumstances, cause for a new trial, it certainly is not when it appears that the court unsuccessfully employed all the power at its command to procure the at-tendance of these witnesses. It is not within the power of a court of this State to send its officers beyond the territorial limits of the State, with a view to en-forcing the attendance of non-resident witnesses upon such court. The failure of the law to provide a method for enforcing the attendance of non-resident witnesses, or for the procuring and reception of their depositions, is not, in a particular case, a denial to the accused of the equal protection of the laws, or a deprivation of his life or liberty without due process of law.

2. The charge of the judge presented with sufficient fullness and clearness, not only the general rule applicable to the defense of insanity at the time of the killing, but also the rule relating to delusional insanity. It was not essential, in charging the jury on this branch of the law, for the court to use the term "paranoia," but enough if the principle involved was plainly stated to the jury.

3. In order to sustain the independent defense of insanity at the time of the com-mission of an alleged criminal act, it is incumbent upon the accused to prove that he was insane at that time; and an instruction that he must prove this to a "reasonable certainty" is not erroneous, when the jury are distinctly in-formed that a preponderance of the testimony is all that is requisite to estab-lish such reasonable certainty.

4. The assignments of error in the motion for a new trial not referred to above presented no sufficient reason for granting a new trial. The case was fairly submitted to the jury; the evidence authorized the verdict; and the discretion of the trial judge in refusing to grant a new trial will not be interfered with.

Argued June 17, — Decided July 18, 1901.

Indictment for murder. Before Judge Felton. Bibb superior court. April 18, 1901.

*John R. Cooper* and *Herman Brasch*, for plaintiff in error.

*J. M. Terrell*, attorney-general, and *William Brunson*, solicitor-general, contra.

COBB, J. Minder was placed on trial upon an indictment charg-ing him with the offense of murder, and, having been convicted, was sentenced to death. His motion for a new trial was overruled, and he excepted.

1. In one of the grounds of the motion for a new trial complaint is made that the court erred in refusing to continue the case. The application for a continuance was made upon the ground of the absence of certain witnesses whose testimony it is claimed was very

material to the defense of insanity set up by the accused. It appeared that these witnesses resided in the State of Alabama, that the court had caused subpœnas to be issued directed to these witnesses, that they had been transmitted by mail to the witnesses, that the subpœnas had been received by them, and that they had refused to attend court upon the advice of their counsel in Alabama that there was no law requiring them to leave their State to attend as witnesses a court of another State. It distinctly appeared that the witnesses had refused to attend, and there is nothing in the record to indicate that there were any reasonable grounds for hoping that they might be induced to attend at a subsequent term of the court if the case had been continued. Under such circumstances it does not seem to us that the court erred in refusing to postpone the case. In a case of this character, where the life of the accused is at stake, and the court has at its command no compulsory process which could be used to enforce the attendance of the witnesses from beyond its jurisdiction, a promise by the witnesses to attend at a subsequent term of the court might address itself very strongly to the discretion of the trial judge and authorize him to continue the case; but certainly there is no abuse of discretion when the witnesses are beyond the jurisdiction of the court and beyond the power of its process, and not only refuse to attend voluntarily, but give no indication that they will at any time in the future be willing to attend upon the sessions of the court. It was argued here that the court should have sent an officer into the State of Alabama and served each of the witnesses personally with subpœnas. We do not think the court had any authority to do this, even if there were no impropriety in an officer of this State going into the State of Alabama and making personal service of a paper. The courts of this State are under no obligations to litigants to send their officers beyond the limits of the State to do acts which would be purely voluntary on the part of such officers; and certainly the court should not use one of its officers in this way when the sole purpose in so doing would be to produce a species of moral coercion upon a citizen of another State to come into this State, when he is not required by law to do so, and would have a right to ignore the command of the court thus transmitted to him. The point was made in the court below, and was argued here, that the failure of the law of this State to provide a method for compelling the attendance of witnesses from

beyond the jurisdiction of the State, or for obtaining the depositions of such witnesses and allowing them to be introduced in evidence in behalf of a person charged with crime, was a denial to such person of the equal protection of the laws, and his conviction under such circumstances would be depriving him of life or liberty, as the case may be, without due process of law, in violation of the 14th amendment to the constitution of the United States. We do not see how a person on trial could be said to be denied the equal protection of the laws when he is tried under laws of procedure applicable to every person charged with crime. Nor can we see how a person is deprived of life or liberty without due process of law, on account of not having the benefit of the testimony of witnesses who are beyond the jurisdiction of the court, when the lawmaking power of the State is powerless to make any provision which would result in the compulsory attendance of the witnesses, and the use of depositions in such cases is directly contrary to the usages, customs, and principles of the common law.

2. Complaint was made that the court did not in its charge fully cover all of the contentions of the accused bearing upon the defense set up by him of delusional insanity, and did not explain to the jury what was meant by paranoia, or delusional insanity. An examination of the charge has satisfied us that the judge clearly stated to the jury, not only the proper rule applicable to the defense of insanity at the time of the killing, but also the rule relating to delusional insanity, sometimes denominated paranoia. It is true that nowhere in his charge did the judge use the term "paranoia," but the charge contained a clear exposition of the law applicable to the defense of delusional insanity; and under the charge the jury could not have had any misunderstanding as to the contention of the accused.

3. Complaint is further made that the court erred in charging the jury that when the accused relies upon the defense of insanity, he must prove the truth of this defense to a "reasonable certainty." While the court did use the expression quoted, the charge clearly indicates that it was used as the equivalent of the expression "preponderance of the evidence," for in another part of the charge the judge instructed the jury that if the accused "proves his insanity to a reasonable certainty by a preponderance of the testimony in the case," the jury will be authorized to acquit. When the charge

is considered as a whole, we do not think there is anything in the use of the expression "reasonable certainty" to mislead the jury, even if reasonable certainty would require a higher degree of mental conviction than that brought about by a preponderance of the evidence.

4. We have examined carefully all of the numerous assignments of error in the motion for a new trial, and none of them, other than those above referred to, require any extended discussion. The charge of the judge, when taken as a whole, appears to be free from error; and we are certain that none of the assignments of error on the portions of the charge set out in the motion for a new trial are well taken. There appears to have been no error committed in the rulings on evidence complained of, but even if there was any error in the admission of any of the testimony which was objected to, the error so committed was not of such a character as to require the granting of a new trial. The deceased was an Irishman; the accused was a Jew, and undoubtedly a man weak both in mind and body, but not to such an extent as to be irresponsible. The deceased seems to have been thoroughly imbued with an antipathy to Jews in general and to the accused in particular, and never lost an opportunity to insult by language and place upon the accused indignities which were hard to bear. The evidence authorized an inference that on account of the overbearing conduct of the deceased toward the accused, at different times, the accused was in mortal dread of him, and his mere presence would sometimes throw the accused into a highly excited and nervous condition. At different places at which the accused lived the deceased had lived, and his conduct toward the accused had been that which was calculated to insult and degrade. He was goaded in a manner that was pitiable, and in a fit of desperation he took the life of his persecutor. Under the law he was guilty of murder. The jury were authorized to so find; the trial judge has approved this finding, and we have no authority to interfere. We would, however, have been better satisfied, in affirming the judgment of the court in refusing to grant a new trial, had the jury seen fit, in the exercise of the authority which the law vests in them, to commute the penalty to life imprisonment. That, however, is a matter which under the law is left to the jury, and neither the trial judge nor this court has a right to change the punishment which the law prescribes. If a mistake has been made,

and this is one of those cases where the penalty should be imprisonment instead of death, the accused is without a remedy, so far as the judicial department of the government is concerned, and must make his appeal to the executive.

*Judgment affirmed. All the Justices concurring.*