## POLK v. THE STATE.

1. "Where jurors on their voir dire had so answered the statutory questions as to prima facie qualify themselves as such, the court did not err in refusing to allow counsel for the accused to make further examination of the jurors." *Lindsay* v. *State*, 138 *Ga.* 818 (76 S. E. 369. See *Duncan* v. *State*, 141 *Ga.* 4 (80 S. E. 317); *Woolfolk* v. *State*, 85 *Ga.* 69 (9 a), 93 (11 S. E. 814).

   (a) Where a juror had qualified on the voir dire, it was not error for the court to refuse to allow him to answer the further question, propounded by counsel for the accused: "Have you any prejudice or bias on your mind against the plea of insanity?" "A mere prejudice against this defense [insanity], or the setting of it up as a sham, will not disqualify one who can render a verdict in accord with the law and evidence." 2 Bishop's New Crim. Proc. (2d ed.) § 918 (3); People *v.* Carpenter, 102 N. Y. 238 (6 N. E. 584); Butler *v.* State, 97 Ind. 378.

2. Under the practice in this State of trying the competency of jurors, only the statutory questions can be asked in the first instance. If the juror answers the statutory questions satisfactorily, and is pronounced prima facie competent, and the parties put him before the court as trior, aliunde evidence of the untruthfulness of his answers must be offered, and it is not competent to propound questions to the juror himself to show his incompetency. It is within the province of the court to permit a further examination of the juror himself in rebuttal of the testimony offered to show his incompetency. *Nesbit* v. *State*, 43 *Ga.* 238, 248; *Carter* v. *State*, 56 *Ga.* 463 (3).

   (a) "At common law a challenge for principal cause was tried by the court on the testimony of the juror to the exclusion of other evidence, and if found true the juror was incompetent per se. If the challenge was to the favor, as for undue influence and prejudice, the challenge was tried by two triors under the direction of the court, on testimony other than that of the juror; and where the common-law practice prevails, substantially the same distinction is preserved." 12 Enc. Pl. & Pr. 468. See *Turner* v. *State*, 114 *Ga.* 421, 422, 423 (40 S. E. 308), and cases there cited.

   (b) After a juror had qualified on the voir dire, he was challenged for cause and put upon the court as a trior. The court, in his province, permitted further examination of the juror. When asked whether his mind was perfectly impartial between the State and the defendant, the juror answered, "I think so." When asked whether in his present frame of mind he felt that he could be perfectly impartial between the State and the defendant, he answered, "I think so." *Held*, that the court did not err in finding him competent. See *Cato* v. *State*, 72 *Ga.* 747 (2); *Dumas* v. *State*, 65 *Ga.* 472; *Norton* v. *State*, 137 *Ga.* 842 (74 S. E. 759).

3. In the trial of a capital case it is not erroneous for the trial judge to explain to the jurors the meaning of the voir dire questions. *Woolfolk* v. *State*, 85 *Ga.* 69 (9 c) (11 S. E. 814). In the case at bar it was not erroneous to explain the meaning of the voir dire questions

after such questions had been propounded to two of the jurors. There is no complaint that the explanation given was within itself in any respect erroneous.

4. Exception is taken to the following charge to the jury: "The defendant, on the other hand, through his counsel contends, while he admits that he killed the person alleged to have been killed in that bill of indictment, he contends that he was not criminally responsible, because at that time, at the time of the killing, he claims that he was laboring under delusional insanity." The error assigned is that the charge unduly restricted the contention of the defendant, and that he should have been given "the benefit of any form of insanity by the court that relieved him of criminal responsibility." In his approval of this assignment of error, the court certifies that counsel for the defendant expressly stated to the court before commencing his charge that delusional insanity was the only form of insanity relied on as a defense. "A party can not obtain a reversal for an error which he has invited, as by a request to charge, or by formal admission that a given principle is not involved in the case." Horton v. State, 120 Ga. 307 (47 S. E. 969); Partee v. State, 19 Ga. App. 752, 756 (92 S. E. 306).

(a) From an examination of the whole charge it appears that the court charged fully on the defense of general insanity, special dementia, and delusional insanity. Indeed, the charge strictly accords with the principles recognized in Roberts v. State, 3 Ga. 310, and consistently followed in Danforth v. State, 75 Ga. 614 (58 Am. R. 480), Carr v. State, 96 Ga. 284 (22 S. E. 570), Flanagan v. State, 103 Ga. 619 (30 S. E. 550), Taylor v. State, 105 Ga. 746 (31 S. E. 764), and all subsequent decisions by this court upon the subject of insanity as a defense in criminal prosecutions. The charge given by the court was in almost, if not exactly, the language of the trial court set out at length in the report of Danforth v. State, supra.

5. Exception is taken to the following charge to the jury: "The law presumes every man sane until it is made to appear, to the contrary, that he is insane or of unsound mind. And if a man files that plea, the burden is on him to make it appear to the satisfaction of the jury, it ought to be made to appear to a reasonable certainty, that at the time of the commission of the act, if any, he did not know the nature and quality of the act, or, if he did know, he did not know the act was wrong." The error assigned is that the charge placed upon the defendant a greater burden than the law requires; "the court put upon the defendant the burden to make it appear to a reasonable certainty that the accused was insane, when the true rule is merely that the defendant must show insanity by the preponderance of evidence." The homicide was admitted. The sole defense was insanity at the time of the commission of the homicide. The defendant offered no evidence whatever; he relied upon his statement alone. The court charged the jury as follows: "If after a full, fair, and honest examination of this evidence in connection with the defendant's statement, your minds are unsettled, unsatisfied, do not know what the truth about it is, then that is what is called a reasonable doubt in law, and you should give him the

benefit of that reasonable doubt and acquit him." *Held,* that the criticism of the instruction excepted to is well taken; but under the facts of the case, and in view of the subsequent charge last quoted, and the whole charge, the error pointed out is not such as to require a reversal.

6. The remaining assignments of error examined, and held not to show cause for reversal.

No. 687. APRIL 11, 1918. REHEARING DENIED MAY 17, 1918.

Indictment for murder. Before Judge Park. Baldwin superior court. October 17, 1917.

John T. Allen and John A. Sibley, for plaintiff in error.

Clifford Walker, attorney-general, E. R. Hines, solicitor-general pro tem., J. J. Bull, and M. C. Bennet, contra.

GEORGE, J. The ruling in the fifth headnote requires elaboration. The defendant was tried for the murder of his wife, was found guilty without recommendation, and is now under sentence of death. The case, on its facts, is an unusual one. The evidence for the State tended to show that the defendant had, without cause, become jealous and suspicious of his wife. He ordered her to leave the home at Milledgeville and return to her father's house in Macon county. On the morning of the homicide he arose, dressed himself as usual, and attended to his usual duties. He abused his wife, and she through fear of him fled to the home of a neighbor. The defendant and his two brothers had a long conference, after which he went to the home in which his wife had sought refuge and asked to see her. She consented to see him on condition that he was unarmed. He went into the room where his wife, with baby in her arms, was seated in a chair. He demanded that she go to her father's home that day, and she refused to go until she could get her money out of the property. According to one of the eye-witnesses: "They also disagreed in reference to a set of furniture. He offered to give her the old set of furniture, and she contended for the new set, and he told her she could not have it. When he was talking to her about going home he was in a very angry mood. . . His wife told him she couldn't get ready to go that day. He wanted to put her on this ten o'clock Georgia train that morning." The wife finally declined to go immediately, and gave reasons for so declining; whereupon the defendant shot her with a pistol, and as she fell to the floor he shot her again. His brothers were present. As indicated in the fourth headnote, the defendant offered no evidence. He relied

upon his statement. The homicide was admitted. The statement of the defendant covers sixty pages of typewritten matter. It is in form a coherent recital of his life's history, with especial attention to the details of his married life. Throughout the statement emphasis is laid upon his implicit confidence in his wife until a short time prior to the homicide. Shortly before the homicide his wife's brother visited his home; and the defendant, with or without reason, conceived the idea that the relations between the wife and her own brother were of an immoral nature. In his statement he set out in detail the facts upon which this conclusion was based, and insisted that his conclusion was well founded. He also claimed to have communicated the facts to the father of the wife, and his father-in-law visited him at Milledgeville and apparently succeeded in bringing about a temporary reconcilation between the defendant and his wife. Shortly after the father returned to his home the defendant discovered, according to his statement, that his wife was continuing her immoral relations with her brother and certain men in the community. He undertook to persuade his wife to return to her father, she refused to do so, and he took her life. His attitude toward the crime (judging from the substance of the statement, from the utter improbability of the things stated, rather than from the manner and form of the statement) was that in taking the life of his wife he had performed a duty to himself, to his children, to mankind, and to God. He did not concede the possibility of a mistake upon his part, but his contention was that the facts were as he had stated them, and that he had acted upon real rather than imaginary reasons. The evidence for the State shows that the wife's brother, before the homicide, had left Milledgeville, and at the time of the killing he was in the United States army. The defendant was a man of good character, and had been employed in responsible positions. A plea of present insanity was at first filed for the defendant, and a trial had before a jury. The verdict was against the plea, and the defendant excepted. The judgment was reversed. *Polk* v. *State,* 18 *Ga. App.* 324 (89 S. E. 437). A second jury also found against the plea, and on exception the judgment was affirmed. *Polk* v. *State,* 19 *Ga. App.* 332 (91 S. E. 439). Upon the trial of the accused for murder, the jury found against his plea of insanity at the time of the commission of the homicide; and while

the issue has thus been settled against him, the quotation from Bishop in headnote 1 (*a*) is employed merely to sustain a legal principle.

Upon the last trial the court charged the jury that "the law presumes every man sane until it is made to appear, to the contrary, that he is insane or of unsound mind. And if a man files that plea, the burden is on him to make it appear to the satisfaction of the jury, it ought to be made to appear to a reasonable certainty, that at the time of the commission of the act, if any, he did not know the nature and quality of the act, or, if he did know, he did not know the act was wrong." This charge was excepted to upon the ground that it placed upon the defendant a greater burden than the law requires; that the defendant is required to show his insanity by a preponderance of evidence only. This precise charge was given in *Danforth* v. *State, 75 Ga.* 615 (58 Am. R. 480). In *Beck* v. *State, 76 Ga.* 452, the 7th headnote is as follows: "There was no error in charging that the law presumes every person to be of sound mind, and the burden is upon the defendant to satisfy the jury, by evidence, to a reasonable certainty that he was not of sound mind at the time of the commission of the act." There was no assignment of error either in the *Danforth* case or the *Beck* case raising the precise question here presented. The point there made was that the burden was upon the State to prove the defendant's sanity, rather than upon the defendant to show his insanity. The headnotes in the *Beck* case were made by the reporter, and there is nothing in the opinion of the court to sustain the 7th note, just quoted, on the precise question here made. In *Carter* v. *State, 56 Ga.* 463, 467, Warner, Chief Justice, said: "Inasmuch as the law presumes, for the safety of society, that every person is of sound mind until the contrary appears, therefore that presumption should be rebutted by a preponderance of evidence of insanity at the time the offense is alleged to have been committed. Unless there is a preponderance of evidence in favor of the insanity of the defendant, the jury would not be authorized to acquit him of the offense with which he is charged, on that ground of his defense." The rule there announced was expressly approved and followed in *Danforth* v. *State,* supra, *Carr* v. *State, 96 Ga.* 284 (5), 285 (22 S. E. 570), *Ryder* v. *State,* 100 *Ga.* 528 (5), 529 (28 S. E. 246, 38 L. R. A. 721, 62

Am. St. R. 334), *Minder* v. *State,* 113 *Ga.* 772 (3), 774 (39
S. E. 284), and *Allams* v. *State,* 123 *Ga.* 500 (51 S. E. 506). The
rule is settled beyond controversy in this State that where the
defense of insanity at the time of the commission of the act is
relied upon, the burden is upon the defendant to show his insanity
by a preponderance of the evidence. In *Minder's* case, supra, the
court charged the jury that when the accused relies upon the de-
fense of insanity he must prove the truth of his defense to a "rea-
sonable certainty." It was there said: "While the court did use
the expression quoted, the charge clearly indicates that it was used
as the equivalent of the expression 'preponderance of the evidence,'
for in another part of the charge the judge instructed the jury that
if the accused 'proved his insanity to a reasonable certainty by a
preponderance of the testimony in the case,' the jury will be author-
ized to acquit." It was ruled that the expression "reasonable cer-
tainty," the whole charge considered, did not mislead the jury,
"even if reasonable certainty would require a higher degree of
mental conviction than that brought about by a preponderance of
the evidence." Cf. *Austin* v. *State,* 6 *Ga. App.* 211 (64 S. E.
670); *Bone* v. *State,* 102 *Ga.* 390 (30 S. E. 845); *Warren* v. *Gay,*
123 *Ga.* 245 (51 S. E. 302); *Cole* v. *State,* 125 *Ga.* 276 (53 S. E.
958). The charge excepted to was erroneous. As before pointed
out, the sole defense was insanity at the time of the commission of
the homicide. No evidence, whatever, was offered to show the
insanity of the defendant at the time of the commission of the
homicide, and he relied upon his statement alone. While the jury
might consider his statement upon this defense, as well as any
other defense interposed by him, there is nothing in the statement
itself to show his insanity, except the inherent improbability of
the matters and things stated by him as facts, the peculiarly
atrocious circumstances of the homicide, and the apparent lack
of mitigating circumstances. The statement was made about two
years after the homicide. It is not quite clear how the jury could
have found, from the statement alone, that the defendant was in-
sane at the time of the homicide. In other parts of the charge
the court expressly submitted to the jury the defense of general
and delusional insanity. He also cautioned the jury that the bur-
den was upon the State to satisfy the minds of the jury of the
defendant's guilt to a reasonable and moral certainty and beyond

a reasonable doubt. He instructed the jury: "Therefore you look to the evidence in the case and see, at the time this act, if any, was committed, whether the accused had sufficient mind, or reason, or mental capacity to know that the act was wrong. . . If he did not, then he is not responsible to the law, and ought not to be, because the law does not allow an insane man to be convicted, or a man who has not sufficient capacity to have a criminal intent to be convicted." At the conclusion of his charge he cautioned the jury: "If after a full, fair, and honest examination of this evidence in connection with the defendant's statement, your minds are unsettled, unsatisfied, do not know what the truth about it is, then that is what is called a reasonable doubt in law, and you shall give him the benefit of that reasonable doubt and acquit him." The error in the charge of the court pointed out above is not, the whole record considered, cause for reversal.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*