28073. GRACE v. THE STATE.

SUBMITTED JULY 13, 1973 — DECIDED SEPTEMBER 20, 1973.

*Jean Sonne,* for appellant.

*Fred M. Hasty,* District Attorney, *Walker P. Johnson, Walter Matthews, Arthur K. Bolton,* Attorney General, *Courtney Wilder Stanton, Daniel I. MacIntyre,* Assistant Attorneys General, *B. Dean Grindle,* Deputy Assistant Attorney General, for appellee.

GRICE, Presiding Justice. The appellant Hamp Grace was tried and convicted for the murder of Winnie Mae Watson in the Superior Court of Bibb County and sentenced to life imprisonment.

The appellant's sole defense upon the trial was insanity at the time of the commission of the offense. He introduced into evidence an "Application for Hospitalization of a Mentally Ill Person" and a physician's certificate dated November 27, 1967, certifying the appellant to be mentally ill with acute paranoid schizophrenia and in need of hospitalization at a psychiatric hospital; and a letter to the Judge of the Court of Ordinary of Bibb County which stated that the appellant was being "Discharged other than restored" from Central State Hospital on December 21, 1968.

Upon appeal the appellant enumerates two errors: (1) that the trial court committed prejudicial error in failing to instruct the jury without request that under the circumstances in this case the state had the burden of proof of the sanity of the appellant at the

time of the commission of the crime on September 5, 1972, since he had previously been adjudged insane; and (2) that since he had been adjudged insane and released "other than restored," and the state had failed to introduce any evidence to rebut the defense of insanity, the verdict of the jury was contrary to the law and the evidence.

■ The appellant urges that the burden was upon the state to prove the sanity of a defendant when he had been previously adjudicated insane, and that the court should have so charged. See in this connection, *Allams v. State,* 123 Ga. 500 (3) (51 SE 506); *Geer v. State,* 184 Ga. 805 (3) (193 SE 776); *Troutman v. Troutman,* 223 Ga. 700, 701 (157 SE2d 437).

In our view, the evidence here was not sufficient to authorize such a charge. The appellant was never adjudicated insane.

At the time the appellant was admitted to Central State Hospital such commitments were governed by Chapter 88-5 of the Georgia Public Health Code, Ga. L. 1964, pp. 499, 530 (presently Ga. L. 1969, p. 505 et seq.). Under Section 88-506 of this Act (Ga. L. 1964, pp. 499, 534) no adjudication of insanity was made. The judicial procedure provided merely for a determination of mental illness.

Section 88-511 (Ga. L. 1964, pp. 499, 541) further provided that "The superintendent of a hospital shall as frequently as practicable, but not less often than every six months, examine or cause to be examined every patient and, whenever he determines that the condition justifying the hospitilization no longer exists, discharge the patient and immediately make a report thereof to the Department and to the court of ordinary which ordered the patient hospitalized."

The report to the court of ordinary in the record here reveals that the appellant was placed on convalescent status on December 21, 1967, and discharged one year later "other than restored." Under the Act such discharge could only indicate that the authorities had determined that hospitalization was no longer necessary in view of the appellant's improved mental condition.

Moreover, the evidence here showed that the appellant, when first examined after admission to Central State Hospital, was determined to be acutely psychotic with hallucinations and delusions. The psychiatrist who examined him there concluded that he was then "probably the same as when they call him lunatic or insane or crazy." However, this doctor also testified that after the appellant was placed on medication he "improved greatly" until he was released from the hospital; and that if he had

regressed to his previous mental state, "he probably would have been back."

Since the evidence presented showed that the conditions justifying the appellant's hospitalization for mental illness no longer existed, the burden of proof of insanity was properly placed upon the appellant, and the trial court did not err in failing to instruct the jury that the state had the burden of proving his sanity. See in this connection *Beck v. State,* 76 Ga. 452 (7); *Keener v. State,* 97 Ga. 388 (3); *Minder v. State,* 113 Ga. 772 (3) (39 SE 284); *Allams v. State,* 123 Ga. 500 (1), supra (1 Justice absent); *Polk v. State,* 148 Ga. 34 (5) (95 SE 988) (1 Justice absent); *Currie v. State,* 153 Ga. 178 (2) (111 SE 727) (2 Justices dissenting); *Lively v. State,* 178 Ga. 693, 699 (173 SE 836); *Rozier v. State,* 185 Ga. 317, 319 (195 SE 172); *Murray v. State,* 201 Ga. 201 (2) (39 SE2d 842); *Carroll v. State,* 204 Ga. 510 (2) (50 SE2d 330); *Boyd v. State,* 207 Ga. 567 (2) (63 SE2d 394); *Clark v. State,* 224 Ga. 311 (1) (161 SE2d 836); *Riggins v. State,* 226 Ga. 381 (1b) (174 SE2d 908) (1 Justice dissenting upon other grounds).

These and other decisions are the law in this state on this subject. There is nothing in the Georgia Criminal Code (Ga. L. 1968, p. 1249 et seq.) or any other statute in force which militates against them. The Supreme Court of the United States has not ruled upon a charge like the one involved here.

■ The verdict of the jury was not contrary to the law and the evidence was sufficient to support it.

The appellant contends that his very conduct during the commission of the crime was relevant to show that he was insane; and that this, together with his commitment to Central State Hospital for mental illness in 1967 and the testimony of the psychiatrist who examined him, demanded a verdict of insanity.

In this regard, the evidence shows that the appellant walked into the restaurant where the victim was employed at 9:30 in the morning, oblivious to all the customers, made no attempt to hide a shotgun, and after a few words to her concerning his wallet which he believed she had stolen, shot her in the chest in the presence of many witnesses.

A psychiatrist who examined the appellant shortly after his commitment to Central State testified that he did not know the mental state of the appellant at the time he was released, but that he could "assume" that it had improved greatly prior to his discharge. This doctor also examined the appellant in the Bibb County Jail in December, 1972, approximately three months after

the crime, and testified that at that time he had "decompensated" back to his psychotic state and on that day "was not sane"; however, he admitted that he did not have any opinion as to the appellant's mental state on the date of the murder.

Another psychiatrist also examined the appellant on two occasions several weeks after the commission of the crime. He testified that in his opinion on those occasions the appellant "would not know right from wrong." However, upon questioning he admitted that a schizophrenic paranoid type could "function at times where he would know right from wrong in relation to acts that he is about to commit"; and that it would be most difficult for him or any psychiatrist to definitely establish whether the appellant was "clear, or on a lucid interval at the time the act was committed."

The detective from the Macon Police Department, who shortly before the murder investigated the appellant's complaint that the victim had taken his wallet, swore that he had known the appellant for 15 or 20 years and that in his opinion the appellant was acting "normal" and knew right from wrong on the morning of the homicide. He also testified that on the afternoon of the homicide, when he advised the appellant of his rights, the appellant told him that he had already hired the attorney who represented him upon the trial.

Although the evidence presented was in conflict, it did not demand a verdict of insanity. It supported the verdict of guilty.

We find no error in the proceedings.

*Judgment affirmed. All the Justices concur, except Gunter and Ingram, JJ., who dissent. Jordan, J., concurs specially.*

JORDAN, Justice, specially concurring. I concur in the judgment of affirmance because I am of the opinion that the evidence on the question of the defendant's sanity at the time of the commission of the crime did not demand a finding of sanity or insanity and was sufficient to authorize the jury to conclude that the defendant was sane at the time of the crime.

Our Criminal Code contains many presumptions, some in favor of a defendant and some in favor of the state. The most important presumption in favor of the defendant, of course, is that every person is presumed innocent until proved guilty. This presumption remains with the defendant throughout his trial. Even though he presents no evidence this presumption alone is sufficient to form the general issue for a jury and must be overcome by evidence sufficient to convince the jury beyond a reasonable doubt of the

defendant's guilt.

One of the most important presumptions in favor of the state is that every person is presumed to be of sound mind and discretion. This presumption is conclusive unless the defendant offers evidence to the contrary. Only evidence of a legal adjudication of insanity could overcome this presumption as a matter of law. Any quantum of evidence less than this merely forms an issue between the state and the defendant as to his sanity. Whether or not the presumption of sanity has been successfully rebutted by the defendant in such a case is a question for the jury.

I fail to see the analogy suggested in the dissent between the defense of insanity and that of alibi. The defense of alibi raises the impossibility of the defendant being at the scene of the crime, making this an essential element of the crime which the state must prove in order to convict the defendant. Under the defense of insanity at the time of the commission of the crime, the defendant admits the commission of the act but seeks to avoid the consequences thereof because he did not have the mental capacity to distinguish between right and wrong. The defendant is thus faced by the presumption of sanity in favor of the state and evidence must be offered by the defendant sufficient to successfully rebut this presumption.

GUNTER, Justice, dissenting. The appellant was convicted for having committed the crime of murder.

At the conclusion of the evidence the sole issue for decision by the jury was the appellant's mental capacity to have committed the crime of murder at the time of the occurrence of the homicide.

The evidence showed that the appellant was admitted to the state mental hospital as a mentally ill person on November 29, 1967. The physician's certificate on which the committal was based had diagnosed the appellant's condition as "acute paranoid schizophrenia." The appellant was released from the state mental hospital on December 21, 1968, as "discharged other than restored."

The homicide occurred on September 5, 1972.

A psychiatrist testified that he had examined the appellant on two occasions, once before the homicide and once after the homicide, and that on those two occasions it was his opinion that the appellant would not know right from wrong.

A part of the court's charge to the jury was as follows: "The defendant also sets up as a defense the plea that he was of unsound mind and irresponsible at the time of the alleged crime. I charge

you that under the law of this state every person is presumed to be of sound mind and discretion but the presumption may be rebutted. I charge you further that the acts of a person of sound mind and discretion are presumed to be the product of that person's will, but this presumption may be rebutted. And when in a criminal trial the defendant sets up as a defense that he was insane or of unsound mind at the time of the alleged crime, the burden is upon him to establish this defense, not beyond a reasonable doubt, but to the reasonable satisfaction of the jury by a preponderance of the evidence. If he carries this burden, the defendant is entitled to an acquittal."

Upon objection being made by appellant's counsel to this portion of the court's charge, the trial judge recharged the jury and told them that he was striking the words "by a preponderance of the evidence."

It has always been my view that procedural due process as required by both the Georgia and Federal Constitutions makes it mandatory in a criminal case for the state to prove the guilt of an accused to a jury beyond a reasonable doubt. In our system of justice, an accused is to be considered by a jury to be innocent until the state has proved him guilty beyond a reasonable doubt. This principle is, to me, embedded in and emanates from our fundamental law, the due process clauses in the Georgia Constitution and the Federal Constitution. And this principle, if taken seriously, will not permit a court to charge a jury that an accused bears the burden of establishing his defense of insanity or being of unsound mind to the reasonable satisfaction of a jury.

In a criminal case, I think that it is erroneous for a court to charge a jury that an accused has "the burden" of proving anything. The burden of proving guilt is on the state; and procedural due process prevents a court in our system from charging a jury in a criminal case that the burden of proving a defense or the burden of proving his innocence is on an accused.

In my dissenting opinion in *Trimble v. State,* 229 Ga. 399 (191 SE2d 857), I said: "I am fully convinced that under the due process clause of our Constitution and the Federal Constitution the burden of proving his alibi cannot be placed upon a defendant." I may be wrong, but I am at least consistently wrong; and I say here that the court cannot put the burden on an accused to affirmatively prove his mental incompetency in connection with the commission of an act alleged to be a crime.

I respectfully dissent.

INGRAM, Justice, dissenting. In this criminal case, we are confronted with the question of whether it is constitutionally permissible to place the burden of proof of insanity upon an accused when his insanity is relied upon as a defense to a criminal charge. We are faced secondarily with whether such a burden on the accused is contemplated under the 1968 Criminal Code of Georgia. While in the past, Georgia law has reflected differing opinion as to the degree of proof required in such cases, see, e.g., the analysis in *Carroll v. State,* 204 Ga. 510 (50 SE2d 330), the consensus has been that the burden of persuasion of the jury is upon the accused. In other words, it is incumbent upon the accused to prove his insanity at the time of the commission of the alleged criminal act. *Ross v. State,* 217 Ga. 569 (124 SE2d 280). The standard to which such proof must conform to establish irresponsibility in Georgia is that of the M'Naghten or the delusional compulsion tests. Code Ann. §§ 26-702, 26-703.

While I am in sympathy with the basis of the dissenting opinion of Mr. Justice Gunter, in which the alibi charge analogy is made clear, I am unable to concede that public policy requires the state affirmatively bear the burden of producing evidence of sanity in all criminal proceedings, being mindful that "a requirement of that character would seriously delay and embarass the enforcement of laws against crime, and in most cases be unnecessary." Davis v. United States, 160 U. S. 469, 486 (16 SC 353, 40 LE 499). Thus, I shall confine these remarks to what is perceived to be the more practical and constitutionally permissible procedure for ascertaining responsibility in criminal proceedings and the one which I believe was contemplated by the drafters of the 1968 Criminal Code of Georgia.

Let us first turn to a discussion of the facts in this case and then proceed to review the legal issues and law arising from these facts. Ex facto oritur jus.

## I.
### Facts.

Hamp Grace was indicted, tried and convicted for the murder of Winnie Mae Watson. The defense never denied that Grace did in fact shoot Winnie Watson, but contended throughout the trial that at the time of the commission of the homicide defendant Grace was insane. The sum of the state's evidence was the testimony of two eyewitnesses to the shooting, the testimony of two investigating police officers, and the coroner's report confirming the death of Winnie Watson as a result of a gunshot wound to the chest. This

evidence showed that Grace had walked into the Kwik Shop, a restaurant in Macon, Georgia, where Winnie Watson worked, and had on the morning of September 5, 1972, in the presence of many witnesses and without any effort to conceal the shotgun he was carrying, shot the victim in the chest. The defendant then walked out of the restaurant and expended a shell from the firearm in the presence of one of the witnesses after which he retired from the scene of the homicide. The state called no witnesses and introduced no direct evidence as to the sanity of the accused.

The defense called three witnesses to testify as to the mental condition of Grace prior to, on the date of, and subsequent to the date of the homicide. Detective W. O. Allen, of the City of Macon, being acquainted with the accused for some 15 or 20 years, related how Grace had complained to him on the date of the homicide that the victim, with whom he had passed the previous night, had taken from him certain money and papers, that he wanted them back or that he wanted her arrested. Detective Allen testified he then brought Winnie Watson down to City Hall and questioned her but that she denied any wrongdoing. He then advised Grace that Winnie Watson would not be arrested at that time and that Grace's money and papers, allegedly taken from him, would not then be returned, but that he desired to submit Winnie Watson to a polygraph test on the following day at which time the matter would be pursued further. Grace then advised the detective, "Mr. Allen, if she don't give me my papers back and my money back, pocketbook, then I'll play a little trick on her." Allen related that at the time Grace made this statement he took from his pocket three shotgun shells to draw attention to what he intended to do. It was done in the presence of other police officers. Detective Allen then drove Winnie Watson back to the restaurant where she worked, returning to City Hall where he found that Grace had left, also learning shortly thereafter that Winnie Watson had been shot. Allen further testified that he had not encountered Grace again that day until late in the afternoon when he happened to look out the window of City Hall and to see him standing alone on the street in front just "looking up at the sky." He then went out and got Grace and placed him in custody. Allen related he told Grace at that time Winnie Watson had died, that Grace became very nervous and upset, that he deteriorated into hysterics and crying spells, and that on the following morning Grace had to be brought to the Macon Hospital to be sedated.

The defense then called two psychiatrists, Drs. Perez and

Portuondo, of Central State Hospital, to testify as to the mental condition of Grace. Dr. Perez testified he had examined Grace in November of 1967 and then again following the homicide in December of 1972. He diagnosed Grace's condition on both occasions as acute paranoid schizophrenia, a mental disease. He testified that Grace was not sane, that his malady was exhibited by crying spells, hysterics, the same characteristics as were witnessed by Detective Allen on the date of the homicide. He described the conduct of Grace as being "inappropriate," that he was unable to relate to reality, that in his opinion Grace was incapable of formulating a clear conception of right and wrong, and that for some time Grace's schizophrenia, which was not curable, was being controlled by the use of drugs. In describing other characteristics of Grace's disease, Dr. Perez testified: "When I first saw him, he was acutely psychotic. He was agitated, excited, restless with delusions mainly of a religious nature. He thought he was the Son of God; he had to be called Jesus Christ; he had been born again and was able to save people through his name Grace; that he could put a curse on the doctor and have him die because of that curse. He had to be secluded for several days due to his state of agitation." In further testimony it was indicated that Grace's disease could take on the characteristics of a persecution delusion accompanied by attempts to strike out at those whom his diseased mind thought were persecuting him and that the efforts of Grace to have Winnie Watson arrested and punished for alleged wrongs to him could be an indication of such delusion. Grace was also described as exhibiting the so-called ganser syndrome when examined in December of 1972.

Dr. Portuondo testified he had examined Grace on September 21, and December 11, of 1972, following the homicide. He reiterated in substance the testimony of Dr. Perez, that Grace was mentally diseased. He said of Grace on the day he examined him in September of 1972, some 16 days after the homicide: "I don't think this man was malingering. I think this man was emotionally disturbed. If you want to put it, insane, as you say."

The defense introduced into evidence an "Application for Hospitalization of a Mentally Ill Person," together with a physician's certificate that Grace was mentally ill and in need of psychiatric hospitalization. The diagnosis on the certificate was acute paranoid schizophrenia, dated November 27, 1967. Grace was subsequently committed to Central State Hospital on November 29, 1967, and remained there until December 21, 1968, when he

was released following a period of convalescence, his condition apparently improved. The defense also tendered into evidence a letter addressed to the Ordinary of Bibb County from Dr. James B. Craig, Superintendent of Milledgeville Hospital. The letter indicated that Hamp Grace was being "discharged other than restored" as of December 21, 1968, but that Grace would have to remain under the care of a legal guardian or be subject to the involuntary rehospitalization provisions of Georgia law as regards the mentally ill. No legal guardian was ever appointed for Hamp Grace, and he was never thereafter recommitted to any hospital for his mental condition.

## II.

Burden of Proof under 1968 Criminal Code of Georgia.

The trial court charged the jury in the present case: "When in a criminal trial the defendant sets up as a defense that he was insane or of unsound mind at the time of the alleged crime, the burden is upon him to establish this defense, not beyond a reasonable doubt, but to the reasonable satisfaction of the jury." In this reflection of Georgia law the burden was placed on the defendant not only of coming forward with evidence in rebuttal of the presumption of sanity, but also of persuading the jury to its reasonable satisfaction that he was in fact irresponsible at the time of the commission of the homicide. As the authorities cited by the majority indicate, this proposition is one long-established in this state.

Under the 1968 revised Criminal Code of Georgia, Ga. Code Ann., Title 26, however, I believe it was the intention of the drafters of the Code that the accused would no longer bear the ultimate burden of persuasion in establishing the affirmative defense of insanity. The rights assured by the Code include, under Code Ann. § 26-501, the presumption of innocence and proof of guilt beyond a reasonable doubt: "Every person is presumed innocent until proved guilty. No person shall be convicted of a crime unless each element of such crime is proved beyond a reasonable doubt." As the tentative draft makes clear, when an affirmative defense is raised to a crime, it becomes incumbent on the prosecution to carry the burden of proof as to the non-existence of such defense as well. Affirmative defense, as defined in the tentative draft, means: "With regard to any affirmative defense authorized in this Title, unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present evidence thereon, or do so by his unsworn statement. *If the issue involved*

*in an affirmative defense is raised by evidence rather than by an unsworn statement of the defendant, then the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all other elements of the crime."* Tentative Draft of the Proposed Criminal Code of Georgia § 26-401 (a). The emphasized portion of the definition of an affirmative defense in the tentative draft was not, however, carried over into the final draft and it is only a matter of speculation why this portion was deleted.

Several keys contained in the committee notes to the Code, in various writings in legal periodicals on the proposed Code, and in the Code itself, may, on the other hand, shed some light on why this portion was not included in the final draft. In the committee notes, for example, on the chapter of the Code setting out specific affirmative defenses, Code Ann. Chap. 26-9, this is found with regard to § 26-907: "The purpose of this proposed section is to make it clear that affirmative defenses are not merely technical ones which, if not raised at a particular state of the proceedings, will be considered as waived. They are defenses which go to the merits of the case." If an affirmative defense goes to the merits of the state's case, then the rights guaranteed the accused under § 26-501, the right to be presumed innocent and the right to be proved guilty beyond a reasonable doubt, would require without anything further that the burden of proof as to all elements and all issues raised in the defense would be upon the prosecution. Additionally, as the Criminal Law Study Committee Foreword to the present Code specifically points out, the present Criminal Code was based in large measure on the Model Penal Code and on information supplied by the Illinois Drafting Subcommittee writing the Illinois Criminal Code. See Criminal Law Study Committee Foreword, at page 4. Under both the Model Penal Code and the Illinois Criminal Code the burden of proof as to the issue of the affirmative defense is placed squarely upon the prosecution. See Model Penal Code, § 1.13 (Ten. Draft No. 4, 1955), and Illinois Revised Stat. Chap. 38 § 3-2 (1961) together with Committee Comments. See, also, People v. Robinson, 22 Ill. 2d 162 (174 NE2d 820).

It is also to be noted at this point that under the tentative draft of the proposed Code the present § 26-606 did not appear. This section was added in the final draft and it provides: "Every person is presumed to be of sound mind and discretion but the presumption may be rebutted." Insanity defenses under the Code are affirmative defenses. Such a provision had to be added to allow

the state to rely on the presumption of sanity and avoid the burden of producing evidence in all criminal proceedings proving the sanity of the accused when it was not in issue. I believe it is significant, in understanding the intent of the drafters of the Code, that this presumption of sanity was added to the final draft. If the accused is always to have the ultimate burden of persuasion there is no logical reason to provide a presumption of sanity on which the prosecution may rely. It would, under such circumstances, have no utility and appear to be superfluous. In this regard, see Molnar, The Criminal Law Study Committee, 26 Ga. B. J. 32 (1963) with reference to Schwartz, The Model Penal Code: An Invitation to Law Reform, 49 A. B. A. J. 447-449; and Molnar, Criminal Law Revision in Georgia, 15 Mer. L. Rev. 399, 415-422.

It also needs to be pointed out that the defense of insanity involves one of the essential elements of a crime and that is the mens rea or criminal intention of the accused. Under the revised Code, the prosecution may rely on a presumption of sanity, Code Ann. § 26-606, on a presumption that the acts of a person are wilful, Code Ann. § 26-603, and that the consequences of an act are intended, Code Ann. § 26-604. It may not rely on these presumptions when the mental capacity of the accused is placed in issue. The Committee Notes to Chap. 26-7 make it clear that: "The defense of lack of mental capacity is available to an accused under the Proposed Code, even if due to intoxication, by the application of proposed § 26-601, which defines crime as containing a mental element, and proposed § 26-605, which allows a jury to consider all of the surrounding circumstances in ascertaining the existence or absence of criminal intention." Surely no one would doubt that even if mental capacity is properly raised in defense of a charge it would still be the burden of the state to show the requisite criminal intent. Furthermore, § 26-605 specifies that the question of criminal intent is open to the jury upon a consideration of all the circumstances of the case. It is *not* couched in terms whereby the jury considers only the evidence of the accused introduced to prove his insanity.

Thus, in regard to the 1968 Criminal Code of Georgia, the only acceptable interpretation must be that in most instances the prosecution may rely on the presumption of sanity (to infer the fact of sanity) and need not bear the burden of introducing evidence and of persuasion as to the sanity of the accused in each criminal proceeding; but once the affirmative defense of insanity is raised, i.e., once the accused has come forward with some competent

evidence of insanity whereby the mental capacity of the accused is placed in issue, then the state, in order to prove the criminal intent of the accused, must present evidence to prove the sanity of the accused beyond a reasonable doubt.

### III.
### Constitutional Considerations.

The charge of the trial court that the burden is on the defendant to prove to the reasonable satisfaction of the jury that he was insane at the time of the alleged homicide violates the due process clauses of the Georgia Constitution, Art. I, Par. III, and of the Fourteenth Amendment of the United States Constitution.

Among the hallowed principles fundamental in Anglo-American law and assured as a matter of due process of law are those that an accused is presumed innocent of the charge against him; that the prosecution must establish in the minds of the jury the guilt of the accused beyond a reasonable doubt; and, that if upon any material issue of fact essential to guilt the jury has a reasonable doubt, the defendant is entitled to the benefit of such doubt and a verdict of not guilty. These principles are so fundamental they require no elaboration. See *Kelly v. State,* 204 Ga. 239 (49 SE2d 489); *Mann v. State,* 124 Ga. 760 (53 SE 324); and, *Butts v. State,* 13 Ga. App. 274 (79 SE 87), citing with approval, Coffin v. United States, 156 U. S. 432 (15 SC 394, 39 LE 481).

(a) In 1970, the Supreme Court of the United States, in In Re Winship, 397 U. S. 358 (90 SC 1068, 25 LE2d 368), in applying the principle of reasonable doubt to the various states, established that the due process clause of the U. S. Constitution is the source of the rule that the state must prove each element of the offense beyond a reasonable doubt. And, as Mr. Justice Frankfurter said in Leland v. Oregon, 343 U. S. 790, 803 (72 SC 1002, 96 LE 1302), "it is the duty of the Government to establish . . . guilt beyond a reasonable doubt. This notion—basic in our law and rightly one of the boasts of a free society—is a requirement and a safeguard of due process of law in the historic, procedural content of 'due process.'" (dissenting opinion).

The charge of the trial court that it was incumbent on the accused to prove his insanity at the time of the offense to the reasonable satisfaction of the jury violated due process of law in that it substantially vitiated the principle that the state must prove the guilt of the accused beyond a reasonable doubt. As Professor McCormick has pointed out: "Thus it seems inconsistent to demand as to some elements of guilt such as an act of killing,

that the jury be convinced beyond a reasonable doubt, and as to others, such as duress or *capacity to know right from wrong,* the jury may convict though they have such doubt." McCormick, Handbook of the Law of Evidence, § 321 (2d Ed. 1954) (Emphasis supplied). See, also, Note, Insanity—Burden of Proof, 30 La. L. Rev. 117, Note, Burden of Proof of Insanity in Criminal Cases, 15 Md. L. Rev. 157, and Note, Two Constitutional Problems in Proving Insanity, 48 NW. U. L. Rev. 94. See, also, Weihofen, Mental Disorder as a Criminal Defense, 212-272. The Supreme Court of Colorado has recently voided state legislation on the grounds that "the due process clause of the State Constitution includes the doctrine that the state must prove guilt beyond a reasonable doubt, and that the accused cannot be required by legislative enactment to prove insanity or any other defense by a preponderance of the evidence." People v. District Court for County of Jefferson, 165 Col. 253, 260 (439 P2d 741).

Additionally, although the Supreme Court of the United States in 1952 upheld an Oregon law requiring that an accused prove his insanity beyond a reasonable doubt, Leland v. Oregon, supra, this decision has been substantially compromised by its subsequent opinion in In Re Winship, 397 U. S. 358. As Judge Bazelon noted in his concurring opinion in United States v. Eichberg, 439 F2d 620 (D. C. Cir. 1971): "[T]he continuing vitality of Leland is open to serious question in light of In Re Winship, 397 U. S. 358 (90 SC 1068, 25 LE2d 368). In Winship, the court made it clear that the Constitution is the source of the rule that the government must prove every element of a crime beyond a reasonable doubt. And when the defendant's criminal responsibility is at issue, it would seem to be an element of the offense, subject to the Winship rule." 439 F2d 624. See, also, the dissenting opinion of Mr. Justice Frankfurter in Leland v. Oregon, 343 U. S. 790, 802.

(b) The shifting of the burden to the accused to prove his insanity violates the principle that an accused is presumed innocent until proven guilty. The charge of the trial court shifted the burden of proof to the accused of one of the essential elements of the crime, namely, the requisite criminal intention. In Speiser v. Randall, 357 U. S. 513 (78 SC 1332, 2 LE2d 1460), the Supreme Court of the United States implied that it is constitutionally required that a defendant be free of any burden of proof. The court stated: "Due process commands that no man shall lose his liberty unless the government has borne the burden of producing the evidence and convincing the factfinder of his guilt." 357 U. S. 513,

526, supra. Also, the procedural rule we are engaged with here is analogous to the rule in alibi cases whereby an accused must prove his alibi by a preponderance of the evidence or to the reasonable satisfaction of the jury. The United States Court of Appeals for the Eighth Circuit, in holding such a rule unconstitutional, stated, "[T]his much is clear: when the burden of persuasion is shifted to the defendant to disprove essential elements of a crime, as it was in the instant case, then it is certain that the due process clause of the Fourteenth Amendment has been violated." Stump v. Bennett, 398 F2d 111, 118 (8th Cir.). This statement directly contravenes the holding in Leland v. Oregon, supra. See Note, Insanity—Burden of Proof, 30 La. L. Rev. 117, 124-125 for a discussion. Although the Supreme Court has not had occasion to speak to this question, it is notable that the court vacated and remanded Johnson v. Bennett, 386 F2d 677 (8th Cir.), for further consideration in light of Stump v. Bennett, supra. Johnson v. Bennett, 393 U. S. 253 (89 SC 436, 21 LE2d 415).

I have to conclude from this discussion of the constitutional questions involved that the charge on insanity in the present case was violative of Georgia constitutional and statutory law (Code Ann. §§ 2-103, 26-501) and as well of the due process clause of the Fourteenth Amendment of the U. S. Constitution.

## IV.
### Conclusion.

Justice Jordan's special concurrence in this case suggests the analogy between the defense of insanity and that of alibi is not clear. For this reason, I shall attempt to put it in better perspective. The primary thrust of the alibi defense is that the accused insists he could not have committed the criminal act charged because he was not at the scene of the crime. On the other hand, in the insanity defense, the accused insists he could not have committed the crime because he did not have the required criminal intent which, coupled with the act, constitutes the crime. Code Ann. § 26-601. Thus, the question posed in this case, as with alibi, is whether the accused has the ultimate burden of disproving one of the essential elements of the crime.

I agree that the defendant is faced with the presumption of sanity in favor of the state and have no quarrel with this doctrine. The constitutional problem arises when you permit this presumption of sanity to remain throughout the trial and then put the burden on the accused to overcome it in the minds of the jurors under an instruction from the court that the accused must prove he was

insane. This eviscerates the presumption of innocence in favor of the accused and relaxes the requirement on the state to prove the accused guilty of the crime (including act and intent) beyond a reasonable doubt. The presumption of sanity is nothing more than a vehicle which the legislature has given the state to infer the fact of sanity until there is some issue about it. It is sufficient in most cases because the question of the accused's sanity never becomes an issue in most criminal trials. But this presumption, to infer the fact of sanity, is necessarily rebutted when the accused offers any competent evidence logically tending to prove he was insane at the time of commission of the alleged offense. To hold otherwise is to declare the presumption of sanity (a mere inference) is superior to sworn evidence and no logic can sustain this conclusion. Once the issue is created by the introduction on behalf of the accused of competent evidence, it is then incumbent upon the state to prove the accused was sane and therefore had the requisite criminal intent just as the state must prove the component act of the criminal offense. This is not too onerous a burden for the state to carry to the jury and, in my opinion, our Constitution and the United States Constitution require it.

In conclusion, let me add further the fact that the Supreme Court of the United States has not ruled upon a charge like the one involved here does not relieve us from our duty to protect the citizens of Georgia from a denial of the sacred constitutional safeguards which they possess. The rights of the best among us are in jeopardy if we fail to protect the rights of the worst among us.

We are all compelled at some point to stake out a place to stand on these important constitutional questions. In this case, we have an opportunity and I believe, a duty to stem the tide of erosion of these cherished principles which declare every person in our society is presumed innocent until proven guilty beyond a reasonable doubt. To send this defendant to a prison, instead of an appropriate mental institution, under the record in this case, serves not man nor law. His imprisonment would, I believe, undermine the integrity of the rudiments of our legal system and chart a regrettable route in its wake for others to follow. Thus, I am constrained to dissent from Division 1 of the court's opinion and from the judgment of affirmance in this case.