Carter *vs.* The State of Georgia.

---

JACKSON CARTER, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. Where a question of fact is submitted to the judge for trial, without the intervention of a jury, his decision is as binding on the parties as a verdict, and will only be set aside under the same rules as apply to the vacating of the finding of a jury.

2. Where a jury list was headed " A list of names of jurors in the jury box of Ware county," and was followed by " Given under our hands and seals," signed by the commissioners, ordinary and the clerk of the superior court, the law was substantially complied with, notwithstanding there was no certificate attached that the list contained all the names in the jury box.

3. Under the present practice of trying the competency of jurors, only the statutory questions can be asked in the first instance. After the juror is pronounced *prima facie* competent, then evidence may be introduced showing his incompetency. After the introduction of such testimony it is within the province of the court to examine the juror further.

4. Separation of the jury, known to the defendant at the time, but not brought to the attention of the court until after verdict, is no ground of new trial.

5. Where the question in issue is whether the defendant was insane at the time of the commission of an alleged offense, it is incompetent to ask a physician whether certain domestic troubles constituted a sufficient cause to produce insanity in the defendant.

1. Where a question propounded by the prosecution was subsequently withdrawn, the refusal of the court to allow the answer to be recorded was not such an abuse of his discretion as to require a new trial.

7. Hearsay evidence is inadmissible.

8. Unless the presumption of sanity is overcome by a preponderance of testimony, the jury would not be authorized to acquit on ground of insanity.

9. The verdict is neither contrary to the law nor to the evidence.

Criminal law. New trial. Practice in the Superior Court. Jury. Evidence. Insanity. Before Judge HARRIS. Ware Superior Court, September term, 1874.

Reported in the decision.

M. L. MERSHON; GOODYEAR & HARRIS, by brief, for plaintiff in error.

SIMON W. HITCH, solicitor general; Z. D. HARRISON; JOHN C. NICHOLS, for the state.

WARNER, Chief Justice.

The defendant was indicted for the offense of murder, and on his trial therefor was found guilty. A motion was made for a new trial on the following grounds, which was overruled by the court, and the defendant excepted :

1st. Because the court erred in ruling that it had been proved before him, upon challenge of the array of jurors in said case, upon first and second grounds taken, that the commissioners had all been sworn under section 3910 of the Code of Georgia, when, as defendant alleges, the testimony of Mr. Cason showed affirmatively that he had not been sworn.

2d. Because the court erred in ruling that the jury list was correctly made out in substantial compliance with the law, when, as defendant alleges, there was no certificate attached to said list that it contained all the names in the jury box.

3d. Because the court erred in ruling that the order of the judge at the present term of the court, for completion and revision of the jury box, by making a list, was in conformity to the substantial requirements of the statute authorizing the judge to order a revision.

4th. Because the court overruled the following question asked of J. White on the challenge for favor: "Have you formed a fixed opinion as to the sanity or insanity of the prisoner at the bar, and do you still entertain that opinion?" as to all the jurors subsequently put upon prisoner, the court ruling that the question might be asked, "Have you formed a fixed opinion for or against the prisoner, and do you still entertain that opinion ?"

5th. Because just before court convened after dinner, at the noon recess, on Monday, October 4th, 1875, five of the jury

were found up stairs in charge of a bailiff, and seven were below stairs, separated from the five above stairs, at the time also in charge of a bailiff, which fact, though it came to counsel for defendant, was not brought to the knowledge of the court, testimony having been already taken in said case.

6th. Because when Doctor J. J. Harris was placed on the stand and asked, among other questions, the following: "From all the evidence in this case in relation to the desertion of Carter's children by his wife, and her prostitution, do you consider it a sufficient cause for insanity in Carter, should such insanity exist?" The court overruled said question and erred therein.

7th. Because James M. Mullis, when put upon the stand in rebuttal of the testimony of the defense, was asked by the state "How long before the killing of Corbett did you see him (meaning Carter) last?" His answer was, "I had not seen Carter so frequently before the killing." The court refused to allow such answer to go on the record, although he had allowed it to go to the jury, because the state withdrew the question which evoked the answer, and erred therein.

8th. Because when J. H. Miller was sworn by the defense to rebut the rebutting evidence of the state, and was asked "Were you a notary public in 1874?" and was answered "yes," when the following question was asked: "Did you receive a message by Jim Corbett purporting to come from Corbett, deceased, about an attachment by Carter against Corbett and what was it?" This was overruled by the court, counsel for defense stating that they expected to prove said message from Corbett, deceased, to be that Carter was crazy and to pay no attention to him.

9th. Because the court refused to charge the following written request: "That if the jury, after examining all of the evidence in said case, are not satisfied beyond a reasonable doubt of the sanity of the prisoner at the time of the commission of the homicide; if their minds are wavering or doubtful upon this point, not at rest as to his sanity or insanity, the prisoner is entitled to the benefit of that doubt, and the

jury are bound to acquit." But did charge that if there was a preponderance of evidence in favor of insanity the jury must acquit.

1. It appears from the record that the defendant challenged the array of jurors put upon him by the state, on the ground that the commissioners who revised the jury box had not been sworn as required by the 3910th section of the Code, and that the jury list had not been made out and certified by the commissioners as required by law. It was agreed by the counsel for defendant and the state, in writing, that the presiding judge should hear evidence and pass upon the facts and the law in relation to this ground of challenge. After hearing the evidence, the judge found that the commissioners were sworn according to law. This finding of the judge was binding on the parties and the defendant had no legal right to complain of it.

2. It appears from the evidence in the record that the jury list was headed "A list of names of jurors in the jury box of Ware county," and after all the names appeared the following: "Given under our hands and seals," giving the day and date, and signed by the commmissioners, ordinary and clerk of the superior court, no certificate appearing to said list other than the above statement. The court ordered the commissioners to complete the jury list already made, and to file the same in the clerk's office as the jury list of the county. The jury list, as made out by the commissioners in the first instance, the names on which had been placed in the jury box, was a substantial compliance with the law, and the order of the court to make it more complete by complying with the formal requirements of the statute, did no harm to anybody. We are in some doubt as to whether there was any jury list made out by the commissioners prior to the order of the court directing it to be revised and certified, from the confused statement in the record, but in either event there was no error in overruling the defendant's challenge to the array of the jurors put upon him by the state. The jurors were drawn from the box in which the same were placed by competent legal au-

thority, and under the supervision of the proper officers appointed for that purpose.

3. There was no error in overruling the question asked the juror White: "Have you formed a fixed opinion as to the sanity or insanity of the prisoner at the bar, and do you still entertain that opinion?" *Nisbet vs. The State,* 43 *Georgia Reports,* 238.

4. There was no error in overruling the 5th ground of defendant's motion.  If he or his counsel knew that the jury had separated during the progress of the trial, it was his duty to have called the attention of the court to it then, and not have remained silent and taken his chance for an acquittal, until after the verdict was rendered.

5. There was no error in ruling out the testimony of Dr. Harris, as set forth in the 6th ground of the motion.  The question in issue on trial was whether the defendant was insane at the time of the commission of the alleged offense, and not what would be a sufficient cause to produce insanity.

6. There was no error in overruling the 7th ground of the motion.  The refusal of the court to allow the answer of the witness to be recorded was a matter for the discretion of the court, and did the defendant no harm.

7. There was no error in rejecting the evidence of Miller, as set forth in the 8th ground of the motion.  It was merely *hearsay* evidence, and Jim Corbitt was a competent witness to prove the message sent by him from the deceased to the notary public, if, in fact, such a message was sent.

8. There was no error in the charge of the court, and refusal to charge as requested, as set forth in the 9th ground of the motion.  Inasmuch as the law presumes, for the safety of society, that every person is of sound mind until the contrary appears, therefore that presumption should be rebutted by a preponderance of evidence of insanity at the time the offense is alleged to have been committed.  Unless there is a preponderance of evidence in favor of the insanity of the defendant, the jury would not be authorized to acquit him of

the offense with which he is charged on that ground of his defense.

9. The 10th, 11th, 12th, 13th and 14th grounds contained in the motion will all be considered together, the substance of which is, that the verdict is contrary to law and the evidence. After a careful review of the evidence contained in the record we are of the opinion that there is a preponderance of evidence in favor of the verdict, and that being so, the verdict is not contrary to law, but in accordance therewith, and as the presiding judge was satisfied with the finding of the jury, we will not interfere with the exercise of his discretion in overruling the defendant's motion for a new trial.

Let the judgment of the court below be affirmed.