## 29924. GRACE v. HOPPER.

UNDERCOFLER, Presiding Justice.

Appellant was convicted of murder and sentenced to life imprisonment. On appeal this court affirmed with two Justices dissenting. *Grace v. State,* 231 Ga. 113 (200 SE2d 248). The evidence presented at the trial is set out in that opinion. Appellant's sole defense was insanity at the time of the offense.

Appellant then filed this habeas corpus on the grounds that the trial judge's instructions on insanity violated his constitutional rights by shifting to him the burden of proof on an essential element of the offense and by relieving the prosecution of its burden of proving every essential element of the offense beyond a reasonable doubt. The judge of the habeas corpus court remanded the appellant to custody and this appeal followed.

The pertinent instructions to the jury were as follows:

"The defendant also sets up as a defense the plea that

he was of unsound mind and irresponsible at the time of the alleged crime. I charge you that under the law of this state every person is presumed to be of sound mind and discretion but the presumption may be rebutted. I charge you further that the acts of a person of sound mind and discretion are presumed to be the product of that person's will, but this presumption may be rebutted. And when in a criminal trial the defendant sets up as a defense that he was insane or of unsound mind at the time of the alleged crime, the burden is upon him to establish this defense, not beyond a reasonable doubt, but to the reasonable satisfaction of the jury. If he carries this burden, the defendant is entitled to an acquittal.

"I charge you that although the burden of establishing the insanity or unsoundness of mind at the time of the alleged offense be not successfully carried by the defendant, so as to authorize his acquittal on this ground, it is nevertheless the duty of the jury to consider the evidence touching the alleged insanity in connection with the other evidence in the case; and if, in view of all the evidence, the jury entertains a reasonable doubt of the guilt of the defendant, he should be given the benefit of that doubt and acquitted."

Specifically appellant complains, "(1) that the charge violated his due process right to have the state bear the full burden of proving beyond a reasonable doubt every element of the charge against him, (2) that it offended his due process right to be tried clothed in the presumption of innocence and unencumbered by any burden of disproving an element of the offense, and (3) that it deprived him of his due process right to be judged by a jury free of confusing, contradictory, and inconsistent instructions." *Held:*

In recent years the traditional rules of criminal procedure of various states which shift burdens of proof to the defendant have been challenged as fundamentally unfair and violative of due process. That is primarily the basis of the attack here upon Georgia's typical procedure requiring the defendant to produce evidence in support of an insanity defense and to establish it to "the reasonable satisfaction of the jury." It is argued that the defendant is clothed throughout his trial with a presumption of

innocence and to support a conviction the prosecution must prove every element of the offense beyond a reasonable doubt; that the prosecution must bear the burden of producing such evidence and the burden of persuading the court and jury of the defendant's guilt; and that any shifting of these burdens to the defendant is fundamentally unfair. This argument is supported by In re Winship, 397 U. S. 358, 364 (90 SC 1068, 25 LE2d 368), where it is stated: "Lest there remain any doubt about the constitutional statute of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." This reasoning has been applied to alibi defenses and shifting the burden of proving such defense to the defendant has been held to be violative of due process. *Patterson v. State,* 233 Ga. 724 (7) (213 SE2d 612); Smith v. Smith, 454 F2d 572 (5th Cir., 1971), cert. den. 409 U. S. 885; Stump v. Bennett, 398 F2d 111 (8th Cir.), cert. den. 393 U. S. 1001. Also in Mullaney v. Wilbur, —— U. S. —— (43 USLW 4695, decided June 9, 1975), Maine's rule requiring the defendant to prove by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter was held violative of due process. It was stated, ". . . Maine denigrates the interests found critical in Winship." It was also stated, "Nor is the requirement of proving a negative unique in our system of criminal jurisprudence. Maine itself requires the prosecution to prove the absence of self defense beyond a reasonable doubt . . . Satisfying this burden imposes an obligation that, in all practical effect, is identical to the burden involved in negating the heat of passion on sudden provocation. Thus, we discern no unique hardship on the prosecution that would justify requiring the defendant to carry the burden of proving a fact so critical to criminal culpability."

These United States Supreme Court cases persuade us that in order to comport with due process the prosecution must carry the burden of proving all critical essential elements of the crime charged against a defendant. However, sanity has not been treated as a

critical essential element of the offense which the prosecution is required to prove beyond a reasonable doubt. To the contrary, Leland v. Oregon, 343 U. S. 790, 798 (72 SC 1002, 96 LE2d 1302) states: "Today, Oregon is the only state that requires the accused, on a plea of insanity, to establish that defense beyond a reasonable doubt. Some twenty states, however, place the burden on the accused to establish his insanity by a preponderance of the evidence or some similar measure of persuasion. While there is an evident distinction between these two rules as to the quantum of proof required, we see no practical difference of such magnitude as to be significant in determining the constitutional question we face here. Oregon merely requires a heavier burden of proof. In each instance, in order to establish insanity as a complete defense to the charges preferred, the accused must prove that insanity. The fact that a practice is followed by a large number of states is not conclusive in a decision as to whether that practice accords with due process, but it is plainly worth considering in determining whether the practice 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' Snyder v. Massachusetts, 291 U. S. 97, 105 (1934).

"Nor is this a case in which it is sought to enforce against the states a right which we have held to be secured to defendants in federal courts by the Bill of Rights. In Davis v. United States [160 U. S. 469], we adopted a rule of procedure for the federal courts which is contrary to that of Oregon. But 'its procedure does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar.' Snyder v. Massachusetts, supra, at 105. 'The judicial judgment in applying the Due Process Clause must move within the limits of accepted notions of justice and is not to be based upon the idiosyncrasies of a merely personal judgment . . . An important safeguard against such merely individual judgment is an alert deference to the judgment of the state court under review.' Mr. Justice Frankfurter, concurring in Malinski v. New York, 324 U. S. 401, 417 (1945). We are therefore reluctant to interfere with Oregon's

determination of its policy with respect to the burden of proof on the issue of sanity since we cannot say that policy violates generally accepted concepts of basic standards of justice."

Likewise the dissenting opinion, although decrying Oregon's rule requiring the defendant to prove his insanity beyond a reasonable doubt, stated at page 804: "This does not preclude states from utilizing common sense regarding mental irresponsibility for acts resulting in homicide — from taking for granted that most men are sane and responsible for their acts. That a man's act is not his, because he is devoid of the mental state which begets culpability, is so exceptional a situation that the law has a right to devise an exceptional procedure regarding it. Accordingly, states may provide various ways for dealing with this exceptional situation by requiring, for instance, that the defense of 'insanity' be specially pleaded, or that he on whose behalf the claim of insanity is made should have the burden of showing enough to overcome the assumption and presumption that normally a man knows what he is about and is therefore responsible for what he does, or that the issue be separately tried, or that a standing disinterested expert agency advise court and jury, or that these and other devices be used in combination. The laws of the forty-eight states present the greatest diversity in relieving the prosecution from proving affirmatively that a man is sane in the way it must prove affirmatively that the defendant is the man who pulled the trigger or struck the blow. Such legislation makes no inroad upon the basic principle that the state must prove guilt, not the defendant innocence, and prove it to the satisfaction of a jury beyond a reasonable doubt."

The opinion of Leland v. Oregon, supra, further stated at page 800: "It is contended that the instructions may have confused the jury as to the distinction between the state's burden of proving premeditation and the other elements of the charge and appellant's burden of proving insanity. We think the charge to the jury was as clear as instructions to juries ordinarily are or reasonably can be, and, with respect to the state's burden of proof upon all the elements of the crime, the charge was particularly emphatic. Juries have for centuries made the basic

decisions between guilt and innocence and between criminal responsibility and legal insanity upon the basis of the facts, as revealed by all the evidence, and the law, as explained by instructions detailing the legal distinctions, the placement and weight of the burden of proof, the effect of presumptions, the meaning of intent, etc. We think that to condemn the operation of this system here would be to condemn the system generally. We are not prepared to do so."

We think it is significant that Leland v. Oregon, supra, was not overruled in In re Winship, supra, or in Mullaney v. Wilbur, supra. On the contrary, in the latter case Justice Rehnquist in a concurring opinion, joined by Chief Justice Burger, stated: "I agree with the court that In re Winship, 397 U. S. 358 (1970), does require that the prosecution prove beyond a reasonable doubt every element which constitutes the crime charged against a defendant. I see no inconsistency between that holding and the holding of Leland v. Oregon, 343 U. S. 790 (1952). In the latter case this court held that there was no constitutional requirement that the state shoulder the burden of proving the sanity of the defendant.

"The court noted in Leland that the issue of insanity as a defense to a criminal charge was considered by the jury only after it had found that all elements of the offense, including the mens rea if any required by state law, had been proven beyond a reasonable doubt. Id., at 792, 795. Although as the state court's instructions in Leland recognized, Id., at 794-795, evidence relevant to insanity as defined by state law may also be relevant to whether the required mens rea was present, the existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of the crime. For this reason, Oregon's placement of the burden of proof on insanity on Leland, unlike Maine's redefinition of homicide in the instant case, did not effect an unconstitutional shift in the state's traditional burden of proof beyond a reasonable doubt of all necessary elements of the offense. Id., at 795. Both the court's opinion and the concurring opinion of Mr. Justice Harlan in In re Winship, supra, stress the importance of proof beyond a reasonable doubt in a

criminal case as 'bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free.' 397 U. S. 358, 372 (Harlan, J., concurring). Having once met that rigorous burden of proof that, for example, in a case such as this, the defendant not only killed a fellow human being, but did it with malice aforethought, the state could quite consistently with such a constitutional principle conclude that a defendant who sought to establish the defense of insanity, and thereby escape any punishment whatever for a heinous crime, should bear the laboring oar on such an issue." See also United States v. Greene, 489 F2d 1145, 1152 (D.C. Cir., 1973); Phillips v. Hocker, 473 F2d 395 (9th Cir., 1973), cert. den. 411 U. S. 939.

Accordingly, we hold that the charge in the instant case is not violative of due process.

*Judgment affirmed. All the Justices concur, except Hall, J., who concurs specially, Hill, J., who concurs in the judgment, and Gunter and Ingram, JJ., who dissent.*

ARGUED MAY 12, 1975 — DECIDED
JUNE 27, 1975.

*James C. Bonner, Jr.,* for appellant.

HALL, Justice, concurring specially.

That portion of the charge of the trial court which is under collateral attack here was never challenged at the trial of the case nor in Grace's direct appeal. After the trial judge concluded his instructions to the jury, he inquired of the defendant's counsel if there were any exceptions to the charge. Counsel replied that the words "Preponderance of the evidence" should not have been used with respect to any burden on the defendant to overcome the presumption of sanity. After considerable colloquy, the trial judge overruled the exception. Later that evening he reconsidered, recalled and recharged the jury, and specifically instructed them that he was striking the words "by a preponderance of the evidence." The record indicates that defendant's counsel had no further objections. After conviction, the defendant appealed to

this court and filed two enumerations of error, neither of which concerned the charge attacked in this collateral proceeding. This court held both enumerations to be without merit. *Grace v. State,* 231 Ga. 113 (200 SE2d 248). The two dissenting opinions and the special concurrence were merely discussions of the views of those Justices on the subject of proper jury instructions on insanity.

I do not think the charge under attack here places an unconstitutional burden on the defendant under the reasoning of the Supreme Court of the United States in Mullaney v. Wilbur, 43 USLW 4695 (June 9, 1975). However, even if it did, it must be remembered that a "criminal defendant may in a procedural setting implement choices which have the effect of waiving basic constitutional guarantees." *Patterson v. State,* 233 Ga. 724, 731 (213 SE2d 612). On waiver of objections to jury instructions see Rule 30, Federal Rules of Criminal Procedure, and American Bar Standards Relating to the Administration of Criminal Justice, Jury Instructions 4.6, p. 329-330.[1] The efficacy of this principle was explained in a recent decision of the Supreme Court of the United States where that court noted the probable result of allowing such a point to be raised as an afterthought: "Strong tactical considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult." Davis v. United States, 411 U. S. 233, 241. Even more recently that Court has held that "Our cases do not reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional protection." Schneckloth v. Bustamonte, 412 U. S. 218, 235.

Even if it be said that Grace did not waive in the trial court his right to object to the insanity instruction, surely

---

[1]See also my dissenting opinions in *Thomas v. State,* 234 Ga. 615; *Leach v. State,* 234 Ga. 467; *Gaither v. State,* 234 Ga. 465 and *Sims v. State,* 234 Ga. 177 (214 SE2d 902).

he waived it by failing to raise the point on direct appeal. "At some point the law must convey to those in custody that a wrong has been committed, that consequent punishment has been imposed, that one should no longer look back with the view of resurrecting every imaginable basis for further litigation. . ." Id., p. 262. To put it another way — shall a conviction never be final? When will it end; when will it ever end?

If the question of the construction of the charge here under collateral attack should be reached, Justice Hill and I agree that the charge as a whole did not deprive the defendant of due process of law. I see no error and certainly no error of constitutional proportion. It is in substance the same charge that has been given over the years in Georgia. It is also a very clumsy and prolix one.[2] However, it does not shift the burden of proof to the defendant. The Supreme Court of the United States has long held that "instructions to the jury are not to be judged in artificial isolation, but must be viewed in the context of the overall charge. Boyd v. United States, 271 U. S. 104, 107 (1926); Cupp v. Naughten, 414 U. S. 141, 147 (1973)." Mullaney, supra, concurring opinion of Justice Rehnquist. Furthermore, this court has recently turned away from the pernickety and technical appellate court construction of jury charges which was condemned by Pound[3] almost seventy years ago. Lavender v. State, 234 Ga. 608.

After stating the presumption of sanity, the trial judge charged that the burden was upon the defendant to

---

[2] A modern pattern charge on this issue is currently under preparation by the Committee on Pattern Jury Instructions, Council of Superior Court Judges. See Patterson v. State, supra, for the new approved charge on alibi.

[3] The Causes of Popular Dissatisfaction with the Administration of Justice, 29 ABA Rep. 395 (1906). See also, Meador, Criminal Appeals, English Practices and American Reforms 97, 107 (1973) on difference between the English and American (State and Federal) systems and a rationale of causes.

establish the insanity defense to the reasonable satisfaction of the jury and that if he did this, he should be acquitted.[4] Reasonable satisfaction means no more than a finding that the evidence favorable to the defendant on the issue of insanity is enough to overcome the presumption of sanity. How much is "enough" is answered by the next paragraph in the charge[5] which clearly informs the jury that in order to convict they must find the defendant to be sane beyond a reasonable doubt. The failure of the Maine charge in Mullaney to put the ultimate burden of persuasion by proof beyond a reasonable doubt upon the prosecution was the basis for the reversal in that case. (See the text of Mullaney and footnote 30 concerning the rule in Maine on proof of self-defense, and also the discussion in footnote 31 on the ultimate burden of the prosecutor by proof beyond a reasonable doubt.) In the case before us, this burden quite properly remained at all times upon the prosecution.

We should always be on guard against "mechanical jurisprudence" which exalts form over substance and remember the cautionary advice of Justice Cardozo that there "is danger that criminal law will be brought into contempt . . . if gossamer possibilities of prejudice to a defendant are to nullify a sentence . . ." Snyder v. Massachusetts, 291 U. S. 97, 122.

---

[4] It was pointed out in *Lavender*, supra, in discussing justification, that it was not necessary to find the defendant justified in order to have a duty to acquit, "and it is not necessary for the court to give such a redundant instruction."

[5] "I charge you that although the burden of establishing the insanity or unsoundness of mind at the time of the alleged offense be not successfully carried by the defendant, so as to authorize his acquittal on this ground, it is nevertheless the duty of the jury to consider the evidence touching the alleged insanity in connection with the other evidence in the case; and if, in view of all the evidence, the jury entertains a reasonable doubt of the guilt of the defendant, he should be given the benefit of that doubt and acquitted."

HILL, Justice, concurring specially.

As stated by Justice Hall, instructions to the jury are not to be judged in artificial isolation but must be viewed in the context of the overall charge. Cupp v. Naughten, 414 U. S. 141, 147 (94 SC 396, 38 LE2d 368).

At the expense of prolonging this decision, let us view the overall charge in its pertinent parts.

The trial court charged the jury, inter alia, as follows:

"The defendant's plea of not guilty challenges and denies every material allegation in this indictment and I charge you that before the state is entitled to a verdict of conviction of the defendant at your hands, the burden is upon the state of proving the defendant's guilt as charged beyond a reasonable doubt.

"The defendant enters upon his trial with the presumption of innocence in his favor and that presumption remains with him throughout the trial unless and until it is overcome by evidence sufficiently strong to satisfy you of his guilt to a reasonable and moral certainty and beyond a reasonable doubt. Unless you find such evidence in this case, you would acquit the defendant."

After defining the meaning of "reasonable doubt" and the meaning of direct and circumstantial evidence, the court continued:

"I charge you, however, that whether dependent upon direct or circumstantial evidence the true test in all criminal cases is not whether the conclusion at which the evidence points may be false but whether or not the evidence is sufficiently strong to satisfy your minds and consciences to a reasonable and moral certainty and beyond a reasonable doubt of the defendant's guilt. If the evidence is not thus strong, it would be your duty to acquit.

"Now, gentlemen, I charge you that a crime under our law is a violation of a statute of this state in which there shall be a union of joint operation of act, or omission to act, and intention, or criminal negligence."

Next the court charged the jury that a person will not be presumed to act with criminal intent, and instructed them as to the definition of murder with malice aforethought, and as to the definition of express malice.

Then the court charged as follows:

"Malice is an essential ingredient in murder, as charged in the indictment, and it must exist before the alleged homicide can be murder. Malice, in its legal sense, is not necessarily ill-will or hatred. It is the unlawful, deliberate intention to kill a human being, without justification, or mitigation, or excuse, which intention must exist at the time of the killing. . .

"Now, as to this indictment, gentlemen, I charge you that if you believe beyond a reasonable doubt that the defendant in this county, at any time prior to the return of this indictment, with a weapon or instrumentality named in this indictment, and with malice aforethought, either express or implied, did unlawfully and intentionally shoot Winnie Mae Watson and kill Winnie Mae Watson, as charged in the indictment, and you believe the weapon or instrumentality used, in the manner used, if one was used, was one likely to produce death, then you would be authorized and it would be your duty to convict the defendant of the offense of murder as charged in the indictment. And in that event, the form of your verdict would be, 'We, the Jury, find the defendant, Hamp Grace, guilty.'

"Now, gentlemen, the defendant contends that he's not guilty of the offense charged, and further contends that the state has not shown his guilt of the offense as charged to a reasonable and moral certainty and beyond a reasonable doubt. If from a consideration of the evidence, or from a lack of evidence, you believe these contentions of the defendant to be the truth of the case, or if you believe either of these contentions of the defendant to be the truth of the case, it would be your duty to acquit him, and the form of that verdict would be, 'We, the Jury, find the defendant not guilty.'

"The defendant also sets up as a defense the plea that he was of unsound mind and irresponsible at the time of the alleged crime. I charge you that under the law of this state every person is presumed to be of sound mind and discretion but the presumption may be rebutted. I charge you further that the acts of a person of sound mind and discretion are presumed to be the product of that person's will, but this presumption may be rebutted. And when in

a criminal trial the defendant sets up as a defense that he was insane or of unsound mind at the time of the alleged crime, the burden is upon him to establish this defense, not beyond a reasonable doubt, but to the reasonable satisfaction of the jury [by a preponderance of the evidence]. If he carries this burden, the defendant is entitled to an acquittal."

["By a preponderance of evidence is meant that superior weight of evidence upon the issues involved, which, while not enough to wholly free the mind from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other."]

"I charge you that although the burden of establishing his insanity or unsoundness of mind at the time of the alleged offense be not successfully carried by the defendant, so as to authorize his acquittal on this ground, it is nevertheless the duty of the jury to consider the evidence touching the alleged insanity in connection with the other evidence in the case; and if, in view of all the evidence, the jury entertains a reasonable doubt of the guilt of the defendant, he should be given the benefit of that doubt and should be acquitted . . .

"The question of insanity is a question of fact, as I have said, to be determined by you. If you believe that the defendant committed the act charged against him in this bill of indictment, but that at the time of its commission, he was mentally incapable of distinguishing between right and wrong in relation to that act, then you should acquit him. Likewise, if you have a reasonable doubt as to this, you should give the defendant the benefit of that doubt and acquit him."

On recharge, the trial judge expressly struck from the charge those portions quoted above which appear in brackets, and instructed the jury not to consider those portions as part of the charge.

In my view, the charge, plus recharge, placed the burden upon the state to prove the defendant's guilt, including intent, beyond a reasonable doubt. In my view, the jury was instructed that if they entertained a reasonable doubt as to the defendant's guilt, including sanity, he was entitled to the benefit of that doubt and should be

acquitted. In my view, the charge, plus recharge, when taken as a whole, did not violate the requirement of In re Winship, 397 U. S. 358, 364 (90 SC 1068, 25 LE2d 368), that due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . ," including sanity.

INGRAM, Justice, dissenting.

The majority's reliance upon Justice Rehnquist's concurring opinion in Mullaney v. Wilbur, supra, to sustain Leland v. Oregon, supra, in support of its conclusion is misplaced. A careful reading of the majority opinion written by Justice Powell in Mullaney makes it clear that the ratio decidendi of Leland has been eviscerated by In re Winship, 397 U. S. 358, and the majority opinion in Mullaney.

Winship and Mullaney require the prosecution to prove beyond a reasonable doubt every element of the crime charged against a defendant. Indeed, Mullaney dramatically emphasizes the limitation imposed upon the states in dealing with the decisional foundation of Winship. As noted by Justice Powell, writing for the majority, "Moreover, if Winship were limited to those facts that constitute a crime as defined by state law, a state could undermine many of the interests that decision sought to protect without effecting any substantive change in its law. It would only be necessary to redefine the elements that comprise different crimes, characterizing them as factors that bear solely on the extent of punishment. . . Winship is concerned with substance rather than . . . formalism. The rationale of that case requires an analysis that looks to the 'operation and effect of the law as applied and enforced by the State,' St. Louis S.W. R. Co. v. Arkansas, 235 U. S. 350, 362 (1914) and to the interests of both the state and the defendant as affected by the allocation of the burden of proof."

This leads us to consider the operation and effect of insanity in the criminal law as applied and enforced in Georgia. Does a finding of insanity under Georgia law negate an element of the crime? I submit that it does because one cannot have insufficient mental capacity to distinguish between right and wrong but nevertheless

possess sufficient mental capacity to form a criminal intent.

We need only look to several illustrative Georgia cases for clarification of the legal effect of a finding that an accused was insane at the time of commission of the act charged against him. At least as early as 1868, this court said: "It is, in all crimes one of the ingredients of the offense that there shall be a joint operation of act and intent, and *an insane person cannot, in a legal sense, have any intent.* Indeed, in murder, soundness of mind, in the perpetration of the act, is a part of the definition of the crime." *Long v. State,* 38 Ga. 491, 507. (Emphasis supplied.)

The language of *Long* leaves no reasonable doubt in my mind that we are dealing with an element of the crime and that insanity and criminal intent cannot simultaneously coexist in the same human mind.

*Long v. State* was quoted with approval by this court in *Handspike v. State,* 203 Ga. 115 (45 SE2d 662) (1947). It is true that in these earlier decisions, this court approved the practice of placing the burden on the defendant to prove his insanity by a preponderance of the evidence rather than upon the state to prove the defendant was sane. In fact, most of the older cases do not even discuss the implications of shifting this burden to the defendant. But it must be remembered that all of these cases were decided long before Winship and its progeny which have made clear that shifting the burden of proof to the defendant to require him to disprove an element of the crime violates the Due Process Clause.

Chief Judge Benjamin Harvey Hill, of the Court of Appeals of Georgia, was sorely troubled with placing the burden of proof on the defendant in 1911. In *Wilson v. State,* 9 Ga. App. 274, 286 (70 SE 1128), he wrote this in an assault with intent to rape case on appeal from Cobb Superior Court: "I am not unmindful of the repeated decisions of the Supreme Court that all persons are presumed to be of sound mind, and that the burden is upon the accused to rebut this inference of sanity by a preponderance of evidence. *Carter v. State,* 56 Ga. 463; *Carr v. State,* 96 Ga. 284 (22 SE 570); *Danforth v. State,* 75 Ga. 614 (58 AR 480). This rule is not, however,

universally approved, and seems to be inconsistent with the presumption of innocence. *The criminal intent is a material allegation of every indictment, and is traversed by the plea of not guilty, which puts in issue the question of criminal intent; and the state, in my opinion, should be required to show its existence beyond a reasonable doubt.* The Supreme Court has, however, somewhat mitigated the severity of this rule, and greatly lightened, if not entirely removed, this burden from the accused, by holding that if the jury entertain a doubt on the whole showing, including the question of insanity, they must give the benefit of that doubt to the accused and acquit." (Emphasis supplied.)

I note also this issue subsequently raised its head in this court in 1918 when counsel for a defendant in a murder case argued the trial court erred in not charging the jury that if they entertained "a doubt on the whole showing, including the question of insanity," they should give the benefit of the doubt to the defendant. Counsel's argument was that the failure to charge this principle deprived the defendant of the benefit of the reasonable doubt doctrine on the question of intent. This court found no error because the trial judge had charged the jury that they should not convict unless the state proved all material allegations of the indictment beyond a reasonable doubt *"and that the existence of and the ability to form a criminal intent was a material element in the case."* (Emphasis supplied.)

Thus, the winds of the present controversy have been blowing for many years. The basic due process difficulty inherent in requiring the defendant to disprove a fact essential to conviction has concerned some lawyers and judges for years. The full implications of it are now placed sharply in focus by these recent decisions of the U. S. Supreme Court and they require that we confront the present issue consistent with the due process standards enunciated in these decisions and in our own state law.

It is inconceivable to me that any court today would seriously entertain the notion that the defendant can be made to disprove the criminal act with which he is charged. Likewise, the defendant cannot be made to disprove the criminal intention with which he is charged.

As both act and intention are necessary to constitute the actual crime, both are part of the burden of proof the state must carry in our system of criminal justice.

Perhaps, it can be argued that proof of act and proof of intent should not be subject to the same burden standard. After all, intent is typically considered a fact peculiarly within the knowledge of the defendant whereas the act itself is not. Can this distinction be used to justify a different standard and allocation of the burden of disproving intent to the defendant? Justice Powell answers this question in Mullaney with this observation, "And although intent is typically considered a fact peculiarly within the knowledge of the defendant, this does not, as the court has long recognized, justify shifting the burden to him. See Tot v. United States, 319 U. S. 463, 469 (1943); Leary v. United States, 395 U. S. 6, 45 (1969). Nor is the requirement of [the state] proving a negative unique in our system of criminal jurisprudence . . . Thus, we discern no unique hardship on the prosecution that would justify requiring the defendant to carry the burden of proving a fact so critical to criminal culpability."

These words were written to strike down the State of Maine's requirement that a defendant charged with murder prove that he acted in the heat of passion on sudden provocation in order to reduce the homicide to manslaughter. That holding points inescapably to the due process infirmity of Georgia's requirement that a defendant charged with murder, as in the present case, prove he lacked the necessary intent to commit the crime of murder. The defendant Grace admitted the act, but denied the criminal intent to commit murder in this case.

I would hold that when the defendant introduced evidence showing he lacked sufficient mental capacity to form the necessary criminal intent to commit murder, an issue arose as to the defendant's sanity and the burden was upon the state to prove the defendant's sanity in order to prove his criminal intent.

The issue of the defendant's sanity (criminal intent) was the only real issue in the trial of this murder case. That issue went to the jury with the instruction that it was up to the defendant to prove he was insane. I do not believe this instruction can be reconciled with the requirement of

the Due Process Clause of our Federal and State Constitutions that the prosecution must prove beyond a reasonable doubt every fact essential to conviction, every element of the crime, both act and intention.

Finally, I would add this postscript: Every appellate judge knows some give and take in language is sometimes required to gain a majority vote on a court composed of members conscientiously divided on critical issues. Thus, a majority opinion written by one judge is often a composite view and is representative of several views held by those who join the majority opinion. It may not go as far as the author would have it go but it may nevertheless disapprove of the principles of decision in a case that cannot be overruled without losing one or more concurring judges.

I think this is basically what may have happened in Mullaney by the different treatment given Leland v. Oregon in the majority opinion written by Justice Powell and in the concurring opinion written by Justice Rehnquist. Although the votes of Chief Justice Burger, who joined the concurring opinion, and Justice Rehnquist were not needed for a majority, we have no written opinion by another justice. Thus, we know from the decision only that the remaining justices joined the majority opinion.

I do not believe a majority of the members of the U. S. Supreme Court can hold there is no constitutional requirement for the state to shoulder the burden of proving the sanity of the defendant, in a Georgia case where the defendant's insanity negates mental capacity to form a criminal intent, without compromising the reasoning in Winship and Mullaney. Even if they were to do so, my present opinion is that a different result would still be required by the Georgia Constitution and statute law as explained in the dissents in *Grace v. State,* 231 Ga. 113 (200 SE2d 248). I am not persuaded that the accused would receive an unfair advantage by our recognition of the due process obligation of the state to carry this burden of proof. See *Coker v. State,* 234 Ga. 555. I dissent from the majority opinion approving the jury charge given in this murder case, as it placed the burden on the defendant to prove the only fact in issue in the trial of the case.

I am authorized to state that Justice Gunter joins in this dissent.