### 30105. REVILL v. THE STATE.

UNDERCOFLER, Presiding Justice.

The appellant, Frank Revill, Sr., was indicted by the grand jury for the murder of his wife Mattie Revill, tried before a jury in the Superior Court of Colquitt County, convicted and sentenced to life imprisonment on October 15, 1974.

Upon the trial the state presented evidence to establish the following:

On Saturday, August 19, 1974, somewhere between 7 p.m. and 9 p.m., while appellant was away from home, Mattie Revill and her daughter returned home. Appellant returned home around 11 p.m. and had an argument with his wife.

Appellant left the house and spoke to a neighbor, gave him the keys to both of his cars, asked him to give one to his son and keep one for himself, to look after his children and to tell his son to come to the jailhouse to see him — he would probably be in jail waiting on him. About twenty minutes later the neighbor heard five shots fired and appellant came to the neighbor's home and asked him to call the police. The neighbor went in appellant's house and found the wife dead. When the police arrived appellant surrendered to them and turned over the death weapon saying, "Here is the gun. I killed my wife."

After asking the neighbor to tell his son to come to the jail to see him, appellant returned to the house, pointed the pistol at his wife's face and pulled the trigger but it did not fire. He took off the safety and shot his wife in the arm. She tried to close herself in a closet but he pulled her out. She went behind a bed and he looked under the bed and fired at her six times. Mrs. Revill was struck by six bullets, one of which struck her heart causing her death.

The appellant testified in his own behalf that on numerous occasions during their twenty-five year marriage he caught his wife having sexual relations with other men and when he returned home on the night of the shooting, his wife began threatening to go out again anytime she wanted to, with whomever she wanted to, and stay as long as she wanted to. He denies any memory of shooting his wife.

Appellant enumerates as error only the general grounds.

In arguing that the verdict is contrary to law in that the state failed to carry its burden of proving the accused guilty beyond a reasonable doubt the appellant concedes that the state proved that the accused caused the death of another human being but alleges the state failed to carry the burden of showing that the accused acted with malice aforethought.

Evidence of the appellant's preparations to go to jail

by disposing of his automobiles, asking someone to take care of his children, indicating he would be going to jail and shortly thereafter shooting his wife to death was ample evidence from which the jury could find malice aforethought.

In arguing that the verdict is contrary to the evidence and strongly against the weight of the evidence appellant avers that the state failed to introduce evidence sufficient to overcome the presumption that the accused could not distinguish the difference between right and wrong at the time of the shooting, or that because of mental disease he acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the act with which he was charged.

Appellant grounds this assertion on the basis that "the prosecution raised the issues of mental incapacity and/or delusional compulsion when, through Sgt. Tom Pruette of the Moultrie Police Department, the statement of Frank Revill, Sr., was introduced in which statement Frank Revill, Sr., stated that he did not remember anything which happened between the time he put his minor child down on the floor and the time he got into a police car."

The trial judge charged on the provisions of Code Ann. § 26-702 (Ga. L. 1968, pp. 1249, 1270), "Mental capacity; insanity," and Code Ann. § 26-703 (Ga. L. 1968, pp. 1249, 1270), "Delusional compulsion." In fact, he went even further and charged the jury that, "Likewise, if you have a reasonable doubt as to whether or not the defendant was able to distinguish between right and wrong at that time, you should give the defendant the benefit of the doubt and acquit the defendant because of insanity," without reference to the particular act except as to time.

With reference to the responsibility for going forward with the evidence on the issue of insanity, the trial court instructed: "Now, as I stated before, under our law, every person is presumed to be of sound mind and discretion, but that presumption may be rebutted. Now the defendant in this case has interposed a defense of insanity at the time of the commission of the alleged offense. Now the defense of insanity does not have to be established beyond a

reasonable doubt, but to the reasonable satisfaction of the jury, that the defendant was insane at the time the alleged crime was committed, if one was committed. Any evidence whatever of insanity of the defendant is to be considered by you on the general case with the rest of the evidence, and if a reasonable doubt of guilt be raised by the evidence as a whole, that doubt must be resolved in favor of the innocence of the accused."

Positioning the responsibility for establishing the defense of insanity on the defense accords with the majority view of this court expressed in *Grace v. Hopper*, 234 Ga. 669.

Appellant's counsel made no objection to any of the instructions.

From the evidence of premeditation discussed above and evidence at trial that the appellant had an extremely retentive memory of events before and after the offense coupled with the absence of any evidence of insanity or delusion other than the alleged loss of memory at the time of the offense we cannot say that the evidence demanded a finding of not guilty by reason of insanity.

*Judgment affirmed. All the Justices concur, except Gunter and Ingram, JJ., who dissent.*

SUBMITTED JUNE 30, 1975 — DECIDED SEPTEMBER 11, 1975.

*Moore & Chambliss, Saxby Chambliss,* for appellant.

*H. Lamar Cole, District Attorney, Arthur K. Bolton, Attorney General, Julius C. Daugherty, Jr., Staff Assistant Attorney General,* for appellee.