## 31446. PARRISH v. HOPPER.

PER CURIAM.

On this appeal from the Tattnall County Superior Court's denial of his habeas corpus petition, Parrish attacks two unrelated but concurrent 1971 sentences, one for burglary, and one for armed robbery. Challenging his burglary conviction, Parrish presents here a constitutional attack on the instructions given his jury governing the inference to be drawn from his recent possession of stolen property. The sole issue presented in challenge to the armed robbery conviction is the validity of a police search of a certain suitcase belonging to him following his arrest.

1. The charge which Parrish attacks as burden-shifting is in pertinent part as follows: "I charge you on the law of this state relative to recent possession of stolen goods. I charge you that if you find from the evidence that a burglary was committed as charged in this indictment, and that recently after such burglary this defendant was found in possession of some of the articles alleged to have been stolen as a result of said burglary, that belonged to Mr. Green, that would be such a circumstance and inference from which you would be

authorized to convict him of the burglary, unless he makes an explanation of his possession of the stolen goods, consistent with his innocence in your opinion, all of which you are to be the judges.

"This being an inference of fact and not of law, the same is therefore rebuttable, but there is a burden upon the defendant, if you find that he was—that a burglary was committed and that recently thereafter the defendant was in possession of some of the articles alleged to have been stolen, there is a burden upon him to prove to your reasonable satisfaction that he came in possession of those articles in a legitimate way and manner, that burden is upon him to satisfy your mind of that fact."

In our opinion the first paragraph is not bur-den-shifting, but is crucially different from the charge condemned in Byrd v. Hopper, 402 FSupp. 787 (N. D. Ga. 1975). Although it places some duty on defendant to go forward with the evidence, it does not shift from the state the ultimate burden of persuading the jury of his guilt beyond a reasonable doubt. Barnes v. United States, 412 U. S. 837 (1973) (presumption of guilty knowledge from possession of recently stolen mail.)

In the second paragraph, however, the trial court fell into fatal error in instructing the jury that if they found recent possession "there is a burden upon him to prove to your reasonable satisfaction that he came in possession of these articles in a legitimate way and manner, that burden is upon him to satisfy your mind of that fact." This language had the effect of suggesting to the jury that defendant had a burden of persuasion. It seemed to place on him a burden of proof of innocence at odds with the state's burden of proving guilt beyond a reasonable doubt, and thus rendered this trial fundamentally unfair. Cf., Smith v. Smith, 454 F2d 572, 579 (5th Cir. 1972) (alibi charge). The second paragraph of this charge is far more damaging than the charge given in our recent decision, *Thomas v. State,* 237 Ga. 690 (229 SE2d 458) (1976).

2. At Parrish's armed robbery trial the state introduced into evidence the gun taken in the robbery, which was found by Kentucky police in Parrish's suitcase following his arrest in that state on misdemeanor charges. The admissibility of this weapon was hotly contested

during the trial, and either was or could have been contested further on appeal. In these circumstances, we will apply the rationale of Stone v. Powell, — U. S. — (96 SC 3037, 49 LE2d 1067) (1976) and deny further review of this issue on habeas corpus. Accordingly, the sole issue raised concerning the armed robbery conviction is without merit. See also *Jacobs v. Hopper*, 238 Ga. 431.

*Judgment affirmed in part and reversed in part; conviction for burglary vacated. All the Justices concur in Division 1, except Hall, J., who concurs specially, and Nichols, C. J., and Undercofler, P. J., who dissent. All the Justices concur in Division 2, except Gunter and Ingram, JJ., who dissent.*

ARGUED SEPTEMBER 14, 1976 — DECIDED FEBRUARY 14, 1977—REHEARINGS DENIED MARCH 9, 1977.

*James C. Bonner, Jr.,* for appellant.

*Arthur K. Bolton, Attorney General, John B. Ballard, Jr., Assistant Attorney General,* for appellee.

HALL, Justice, concurring specially.

The most important issue in this appeal is one which the per curiam opinion does not address; namely, was the objection to the burden-shifting charge waived by counsel's failure to assert it at trial? This issue cannot be decided apart from the more general considerations of what it takes to waive certain constitutional rights, and what issues are reviewable on habeas corpus. In my opinion the court's refusal to articulate a coherent position on this subject leaves our past decisions a welter of contradictions. I will attempt here to state my own position on constitutional waiver.

A. *Waiver—Shoemake v. Whitlock Outdated*

As an initial matter, the state contests on two grounds Parrish's right to raise on habeas any complaint concerning jury charges given at his trial. The state argues that such complaints are not cognizable at all on habeas, and that in any event Parrish waived this point by failing to object at trial.

It is true that *Shoemake v. Whitlock,* 226 Ga. 771 (177

SE2d 677) (1970) stated that jury charges could not be challenged on habeas corpus; but I do not believe that any member of the court thinks that this states the law correctly in all instances. The proper standard allows jury charges to be considered on habeas if their deficiencies rendered the trial fundamentally unfair, as was recognized in *Byrd v. Hopper,* 234 Ga. 248 (215 SE2d 251) (1975) which modified *Shoemake,* but stopped short of overruling it. It should be noted that after he failed to obtain relief in this court, Shoemake's writ was granted by the federal district court in a decision plainly spurning any contention that objections to jury charges in a proper case are not cognizable in federal habeas. Smith v. Smith, 454 F2d 572 (5th Cir. 1972). This court has not recently applied *Shoemake,* but to avoid confusion, *Shoemake* should be overruled to the extent that it implies that even charges violative of defendant's fundamental constitutional rights are not cognizable on habeas. It follows that other decisions which were grounded in *Shoemake,* such as *Martin v. Smith,* 227 Ga. 668 (182 SE2d 316) (1971), and *Montgomery v. Smith,* 227 Ga. 601 (182 SE2d 443) (1971), and *Stynchcombe v. Clements,* 227 Ga. 244 (179 SE2d 917) (1971) are similarly unreliable.

B. *Waiver—The Georgia Habeas Corpus Statute*

With *Shoemake* out of the way, what is presented by Parrish's appeal is whether he waived his right to contest this charge by failure to object to it at trial, when no such objection is clearly required under state law to preserve a point for habeas review. The law of this state governing appeals stipulates that jury charges may be attacked on appeal even though not objected to at trial. Code Ann. § 70-207 (c). There is nothing in the habeas corpus statute, Code Ann. § 50-127, which requires contemporaneous objection for such charges to be considered on habeas. The state argues that an unobjected-to charge cannot be the "substantial" denial of rights referred to in Code Ann. § 50-127 (1); but I think it may be. Thus, state law is somewhat unclear on the need for an objection.

It is true that our habeas corpus statute, Code Ann. § 50-127 (1), purports to contain its own waiver test: "Except for objections relating to the composition of a grand or traverse jury, rights conferred or secured by the

Constitution of the United States shall not be deemed to have been waived unless it is shown that there was an intentional relinquishment or abandonment of a known right or privilege which relinquishment or abandonment was participated in by the party and was done voluntarily, knowingly, and intelligently."

It has been my position for quite some time that this statutory waiver provision is not enforceable, because it represents an attempt by the legislature to control what is not a legislative matter. What shall be effective to waive federal constitutional rights is a federal constitutional question. This court and not the legislature is entrusted with the interpretation of the Federal Constitution, (Const. Art. VI, Sec. II, Par. IV; Code Ann. § 2-3704 (Rev. 1973)), and our decision on this point is directed ultimately by rulings of the United States Supreme Court. An attempt by the legislature, such as we have here, to take one such ruling and enshroud it in statutory concrete to prevent any further modification by further court rulings, must fail.

It is beyond question that waiver of a federal constitutional right is a federal constitutional question. "The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." Brookhart v. Janis, 384 U. S. 1, 4 (1966). "[W]e follow our consistent holdings that the adequacy of state procedural bars to the assertion of federal questions is itself a federal question." Douglas v. Alabama, 380 U. S. 415, 422 (1965). "The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards." Boykin v. Alabama, 395 U. S. 238, 243 (1969). "Whether a waiver of constitutional rights is effective is an issue governed by federal standards." Griffith v. Wyrick, 527 F2d 109, 112 (8th Cir. 1975); see Jackson v. Denno, 378 U. S. 368, 377 (1964); see generally Kamisar, LaFave and Israel, Modern Criminal Procedure, pp. 742-744 (1974).

The cases just cited concerned state efforts to offer *less* protection to federal rights than the Federal Constitution as interpreted by the Supreme Court required; the waiver statute we consider sets a *higher* standard of "protection" than the Constitution requires.

This higher standard is similarly invalid.

The states, in attempting to deal with federal constitutional rights, must follow the rulings of the United States Supreme Court. Though they may place any interpretation they desire upon their *State* Constitution, they may not decree that the *Federal* Constitution provides their citizens less protection, nor may they decree that it provides their citizens more, when the United States Supreme Court says to the contrary.

". . .[A] State is free *as a matter of its own law* to impose greater restrictions on police activity than those this court holds to be necessary upon federal constitutional standards. [Cits.] But, of course, a State may not impose such greater restrictions as a matter of *federal constitutional law* when this court specifically refrains from imposing them. [Cits.]" Oregon v. Hass, 420 U. S. 714, 719 (1975).

This principle has been further discussed by individual Justices in separate opinions. See, e. g., United States v. Watson, 423 U. S. 411, 455 (1976) (Marshall, J., dissenting); Michigan v. Mosley, 423 U. S. 96, 120-121 (1975) (Brennan, J., dissenting).

It is plain from the statute that what is sought to be governed is solely *federal* constitutional rights. If state constitutional rights were referred to, we would have a different problem, namely, whether the legislature or *this* court determined what should constitute waiver. That is not before us.

For these reasons, it is necessary to ignore the waiver statute and move to the more complicated consideration of Supreme Court pronouncements on waiver.

C. *Waiver—United States Supreme Court Decisions*

On the question of waiver of constitutional rights, the United States Supreme Court has written, "Our cases do not reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional protection." Schneckloth v. Bustamonte, 412 U. S. 218, 235 (1973).

A commentator has phrased it well: "While Noia's concern for insuring the adequate vindication of the defendant's constitutional rights has become an accepted premise of our federal system, there is a recognition that a

very limited supply of trial resources is available for the litigation of issues presented on habeas corpus. This recognition has led to the realization that it is not feasible to utilize the Johnson v. Zerbst standard to define the circumstances in which a failure to present a constitutional claim at trial will prevent the defendant from asserting his claim on habeas. Although the Supreme Court has never specifically disavowed Noia's incorporation of Zerbst, when faced either with the problem of determining who is competent to decide when a constitutional claim will not be asserted or with the problem of assessing the validity of a decision to waive a claim, the Court has not in recent cases applied the Zerbst standard literally." White, Federal Habeas Corpus: The Impact of the Failure to Assert a Constitutional Claim at Trial, 58 Va. L. Rev. 67, 95 (1972).

Concerning constitutional claims in general without limitation to jury charges, the general question of what failures to invoke remedies or make objections available at trial will be held to constitute a waiver of these points on habeas corpus, is a difficult one.

Our state's decisions have gone both ways on the question whether trial objection is a necessary prerequisite to raising a constitutional issue on habeas. Compare *Strauss v. Stynchcombe,* 224 Ga. 859, 868 (165 SE2d 302) (1968) with *Morgan v. Kiff,* 230 Ga. 277 (196 SE2d 445) (1973).

The factor which unifies seemingly inconsistent prior habeas decisions—some finding waiver and some allowing constitutional issues to be raised for the first time on habeas — is that the court has *power* to do both. We may entertain claims grounded in constitutional rights whenever we conclude that the administration of justice would be thereby furthered; on the other hand we may enforce waiver in proper circumstances to support state procedural requirements which bring a necessary order to the litigation process. The problem lies in finding the proper balance of values.

A look at the treatment accorded this problem in the federal system is instructive. Fay v. Noia, 372 U. S. 391 (1963) showed that failure to take a state appeal did not waive the right to press state complaints in federal habeas

corpus. The court reasoned that under the circumstances the decision not to appeal was not freely made but was a "grisly choice." Unfortunately, "[T]here is little guidance in the court's opinion as to how to distinguish strategic waivers from grisly choices." Comment, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1108 (1970). In Henry v. Mississippi, 379 U. S. 443 (1965) the Supreme Court wrote that "a litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rules serves a legitimate state interest." 379 U. S. 447. But even though no legitimate state interest is served by a procedural rule, a deliberate bypass of it forfeits the right which might have thus been asserted. 379 U. S. 450. Nonetheless, I observe in passing, about Henry, that the state need not "forgo insistence on its procedural requirements if it finds no waiver. Such a finding would only mean that petitioner could have a federal court apply settled principles to test the effectiveness of the procedural default to foreclose consideration of his constitutional claim. If it finds the procedural default ineffective, the federal court will itself decide the merits on his federal claim, at least so long as the state court does not wish to do so." 379 U. S. 452.

The kind of waiver which will be required depends upon the right to be waived. Some answers are clear. For example, "Pre Davis [Davis v. United States, 411 U. S. 233 (1973)] the rule in this [Fifth] circuit had been that a jury discrimination claim barred by a state procedural timeliness rule could be presented initially on federal habeas corpus absent proof by the state of a Fay v. Noia . . . deliberate bypass. . . [Cits.] Davis refused to place upon the United States any burden to show a knowing and understanding waiver and held that a claim of grand jury discrimination would be waived for purposes of collateral relief under 28 USC § 2255, if not raised before trial as required by Rule 12 (b) (2), unless the petitioner made a showing of cause for not presenting it. Post Davis, this circuit has consistently held the Davis rule to be applicable to the state court grand and petit jury discrimination claims." Morris v. Sullivan, 497 F2d 544 (5th Cir. 1974). It is now clear that the United States

Supreme Court requires petitioner to show both cause and prejudice for belated assertion of a state jury composition claim which was not asserted before trial as state law required. Francis v. Henderson, 425 U. S. 536 (96 SC 1708, 48 LE2d 149) (1976).

(In light of these cases, it is clear that this court's choosing, in *Mitchell v. Smith,* 229 Ga. 781 (194 SE2d 414) (1972) to allow a belated jury discrimination claim to be raised on habeas, was not compelled—in future cases such a claim might well not be entertained.)

But Francis v. Henderson dealt with a state rule requiring a pre-trial assertion of rights respecting certain pre-trial matters. Far murkier is the situation concerning whether rights at trial are forever waived by failure to assert them. The Supreme Court has granted certiorari this term in Wainwright v. Sykes, 45 USLW 3272, to review 528 F2d 522 (5th Cir. 1976) which allowed a petitioner to object on habeas to the admission of a confession not challenged at trial. However, the Fifth Circuit held that the trial judge's failure to question admissibility of the statement and to require the state to introduce any predicate to its admissibility, failed to inform petitioner of any need to assert his right, and therefore waiver would not be found. Consequently, the Supreme Court treatment of the issue may not be definitive on the subject of the binding nature generally of failures to object to trial evidence or procedure.

It is instructive to note that the federal courts, in granting relief from the burden-shifting impact of Georgia's old alibi charge, did not require any objection to the charge in the trial court to preserve the point for federal consideration. In fact, surprisingly enough, Smith not only failed to object to the charge, but he actually requested a portion of it, a point which was urged by the respondent in moving to dismiss his petition in federal court. The district court, in refusing to dismiss and granting the writ, had this to say: "The court considers the requested charge merely as an attempt by defendant's trial counsel to bring out the most favorable aspects of Georgia alibi law. The court will not permit petitioner to be prejudiced by the requested charge." Smith v. Smith, 321 FSupp. 482, 484, n.2 (ND Ga. 1970). That was the

district court decision which was subsequently affirmed in Smith v. Smith, supra. (That was also the decision which granted Shoemake's writ after this court had held in *Shoemake v. Whitlock,* supra, that his constitutional objection to his jury charge was not cognizable in habeas).

I note in passing that *Morgan v. Kiff,* supra, which allowed Fourth Amendment objections to evidence to be raised on habeas for the first time, has not been followed on this particular point in any succeeding case, though it has been cited on other points in *Wilson v. Hopper,* 234 Ga. 859, 863 (218 SE2d 573) (1975); *Ferguson v. Caldwell,* 233 Ga. 887, 890 (213 SE2d 855) (1975); and *Cadle v. State,* 136 Ga. App. 232, 234 (221 SE2d 59) (1975). I think *Morgan v. Kiff* should be overruled insofar as it purported to hold generally that constitutional claims not pressed at trial might be raised for the first time in a habeas petition. Of course, sometimes a constitutional point not argued at trial may be cognizable on habeas—the instant appeal is such an example.

D. *Waiver—Some Conclusions*

However desirable the simplicity of a general rule might be, I am compelled to conclude that waiver must be determined on a case by case basis. Some rights are more fundamental than others, and must be waived by defendant himself and not merely by his counsel's choice. Compare Boykin v. Alabama, supra, with Schneckloth v. Bustamonte, supra. This fact alone may be determinative, if the claimed "waiver" was not made by the proper agency. Other circumstances which may sometimes bear upon determinations of waiver vel non are the nature of the right waived; whether the right was established in law at the time; the degree of deliberateness in choosing to forgo asserting it; the strength of the state's interest in the procedural requirements at issue; and perhaps other considerations as well. See also White, Federal Habeas Corpus: The Impact of the Failure to Assert a Constitutional Claim at Trial, 58 Va. L. Rev. 67, supra; Comment, Federal Habeas Corpus and the Doctrine of Waiver Through the Deliberate Bypass of State Procedures, 31 La. L. Rev. 601 (1971); Comment, Developments in the Law—Federal Habeas Corpus, 83 Harv. L. Rev. 1038, 1103, 1112, supra.

I note that in footnote 3 of Estelle v. Williams, 425 U. S. 501, 508 (96 SC 1691, 48 LE2d 126) (1976) and citations therein, the Supreme Court hints strongly that those trial rights which are subject to waiver by counsel without consultation with the accused may be waived even by inadvertent nonassertion at trial despite the fact that the accused's constitutional rights are involved.

The state urges Estelle v. Williams in support of a contemporaneous objection requirement. There, the Supreme Court ruled that failure to object to being tried in prison clothes waived any objection, because it negated the suggestion of compulsion. However, the Court emphasized that a contemporaneous objection would probably have cured the fault, because the trial court typically honored requests to be tried in civilian clothes. Petitioner was thus held to his waiver because he elected to forgo a right to which his entitlement was clear at the time he chose not to assert it.

Parrish's right successfully to object to the charge on recent possession was by no means clear. Such a "right" has not before today's decision been recognized by our state courts; this jury charge has not been disapproved before.

Because Parrish cannot be thought to have "waived" a right which was not recognized to exist at the time of the "waiver," I would not impose on him any requirement for a contemporaneous objection as a prerequisite for habeas review.

For these articulated reasons I concur in the judgment on this appeal.

E. *Retroactivity*

In my view the court should address the possible retroactivity of today's decision as it affects other defendants tried under a similar recent possession charge. In considering the Stovall v. Denno criteria of (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards, 388 U. S. 293, 297 (1967), I conclude that the purpose of the new standard is to enhance the fairness of the guilt determination phase; but retroactive application of a

ruling invalidating a frequently used charge on recent possession of stolen property could unsettle convictions without number, having a dire effect on the administration of justice.

Due process is recognized to be an evolving concept: Fairness today may be something different and better than fairness yesterday; but yesterday's fairness may have been adequate for its own time. The concern of recent years with the possible burden-shifting effect of certain time-honored charges on presumptions and affirmative defenses (see, e.g., *Grace v. Hopper,* 234 Ga. 669 (217 SE2d 267)(1975)) is resulting in an approach to jury charges more scrupulously careful than has obtained in the past. Yet unsettling all past convictions by juries for a renewed investigation of the possible burden-shifting effect of charges not reasonably subject to question at the time they were given, would have an adverse effect on the administration of justice which need not be detailed. Similar reasoning underlay the decision of the Fifth Circuit in Bassett v. Smith, 464 F2d 347 (5th Cir. 1972) cert. den. 410 U. S. 991, reh. den. 411 U. S. 978, in which the court denied retroactivity to Smith v. Smith, 454 F2d 572, supra, which found the Georgia alibi charge unconstitutionally burden-shifting.

There is, as was recognized by the dissent in Bassett, a conflict between the conclusion that the charge rendered the trial fundamentally unfair (which is a necessary predicate for a federal court's consideration of a jury charge on habeas) and the conclusion that the erroneous charge had only a "remote possibility" (464 F2d 353) of affecting the integrity of the fact finding process (which was a predicate for the court's denial of retroactivity). Nonetheless, the United States Supreme Court's denial of certiorari from Bassett has finalized the denial of retroactivity.

Thus, as I balance (464 F2d 350) these criteria, I would deny retroactivity to today's ruling, because any newly recognized unfairness in the giving of this time-honored charge is outweighed by considerations of judicial administration. Parrish, himself, is entitled to the benefit of this ruling, however (cf. Stovall v. Denno, 388 U.S. at 301), and to a new trial on the burglary charge

free of the burden-shifting recent possession jury instruction. The giving of a similar charge after the date of this decision will be error. A charge which avoids the error here discussed was set out in footnote 1 of *Thomas v. State,* 237 Ga. 690 (229 SE2d 458) (1976).

UNDERCOFLER, Presiding Justice, dissenting.

I do not agree that the charge set out in Division 1 is erroneous. However, a more important question is not addressed, namely, under what circumstances may a state trial court on habeas corpus reverse a direct holding of a state appellate court. The charge under review was held not to be erroneous in *Parrish v. State,* 125 Ga. App. 97 (186 SE2d 541) (1971).